# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

HYPERQUEST, INC.,

          Plaintiff,

    v.

NUGEN I.T., INC., and DAYLE PHILLIPS,

          Defendants.

Case No. 1:08-cv-00485

**DECLARATION OF**
**DAYLE E. PHILLIPS**

I, Dayle E. Phillips, declare and state that following is true and correct:

1.    My name is Dayle E. Phillips, and I am a Defendant in the above-captioned action.

2.    I am competent to testify about the facts set forth herein, and I do so from personal knowledge.

3.    I am the President, Secretary, Treasurer, and shareholder of my co-defendant, NuGen I.T., Inc. ("NuGen"). I am familiar with NuGen's day-to-day operations.

4.    I live in Olathe, Kansas and have not and do not conduct business personally or through NuGen in the State of Illinois.

5.    NuGen was incorporated in the State of Nevada on January 4, 2006.

6.    Neither NuGen nor I own or lease property in the State of Illinois.

7.    Neither NuGen nor I are registered to conduct business in the State of Illinois.

8.    Neither NuGen nor I have ever had a mailing address or phone number in Illinois.

9.    I have never lived in Illinois, I have never voted in Illinois, and I have never been liable for any income tax in Illinois.

**EXHIBIT**

A

10.    I know that all of NuGen's officers, shareholders, and employees are non-Illinois residents.

11.    Other than changing airplanes at Chicago's O'Hare Airport, I have been in the State of Illinois only twice for very short-term knowledge transfer assignments, and both assignments were undertaken in my capacity as an employee of Safelite, Inc. in 2004, which was before NuGen was incorporated.

12.    Other than the brief period of working for Safelite in Illinois, I have no other contacts with the State of Illinois.

13.    I had no involvement with Plaintiff following my employment with Safelite. Contrary to the allegations in the Complaint ¶¶26 & 27, I have never been employed by the Plaintiff, and the Plaintiff never issued a W-2, 1099, or any other document implicating the existence of an employment relationship with me.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February _14_ , 2008.

_____
Dayle E. Phillips

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HYPERQUEST, INC.,

        Plaintiff,

    v.

NUGEN I.T., INC., and DAYLE PHILLIPS,

        Defendants.

Case No. 1:08-cv-00485

## DECLARATION OF
## JOHN "PETE" TAGLIAPIETRA

I, John "Pete" Tagliapietra, declare and state that following is true and correct:

1.     My name is John "Pete" Tagliapietra. I am competent to testify about the facts set forth herein, and do so from personal knowledge.

2.     I am a majority shareholder of NuGen I.T., Inc. and am familiar with its day-to-day operations. I live and work in Poway, California.

3.     NuGen I.T., Inc. is a Nevada corporation. It has no offices in the State of Illinois.

4.     NuGen I.T., Inc.'s officers, shareholders, and employees are all non-Illinois residents.

5.     NuGen I.T., Inc. is not registered to do business in the State of Illinois.

6.     NuGen I.T., Inc. does not own or lease property in the State of Illinois.

7.     NuGen I.T., Inc. does not conduct any business in the State of Illinois.

8.     NuGen I.T., Inc. has not solicited business, nor made sales in the State of Illinois.

9.     The Plaintiff's Complaint alleges that "in attempting to secure new business from Metropolitan Life Insurance Company ("MetLife"), in or about October 2007, [Plaintiff] learned that MetLife was considering a competing product from NuGen that was quite similar to the

1

EXHIBIT

tabbies®

B

PP04/811932-0002/265208.1

eDoc Express software being marketed by HQ." (Complaint ¶34). Any negotiations for business with MetLife, which is headquartered in Providence, Rhode Island, were conducted on NuGen's behalf by me in Albany, New York.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 25, 2008.

John "Pete" Tagliapietra

# EXHIBIT C

Westlaw.

Slip Copy
Slip Copy, 2007 WL 4335264 (N.D.Ill.)
(Cite as: Slip Copy)

**H**
FM Industries, Inc. v. Citicorp Credit Services, Inc.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
FM INDUSTRIES, INC., Plaintiff,
v.
CITICORP CREDIT SERVICES, INC., Citigroup,
Inc., Citibank Federal Savings Bank, Citibank
(South Dakota), N.A., Citibank USA, N.A.,
Jeanette Brown, John Gillard, Law Office of Ross
Gelfand, LLC, James D. Cortez, Attorney at Law,
Defendants.
Civil Action No. 07 C 1794.

Dec. 5, 2007.

Wayne Donald Rhine, Friedman & Wexler, LLC,
William T. Mcgrath, Davis, Mannix & McGrath,
Chicago, IL, for Plaintiff.
Allan J. Sternstein, Dean A. Dickie, Richard Eric
Gottlieb, Todd A. Gale, Kathleen Elizabeth
Surowiec, Rosa Maria Tumialan-Landy, Dykema,
Gossett, Rooks, Pitts, PLLC, John J. Duffy, Charles
Scott Ofstein, Karen Kies Degrand, Donohue,
Brown, Mathewson & Smyth, Mark Herbert
Remus, W. Rochelle Claerbaut, William H.
Frankel, Brinks, Hofer, Gilson & Lione, Chicago,
IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

SUZANNE B. CONLON, District Judge.
   *1 In its second amended complaint, FM Indus-
tries, Inc. ("FMI") sues Citicorp Credit Services,
Inc. ("CCSI"), Citigroup, Inc., Citibank Federal
Savings Bank ("Citibank F.S.B."), Citibank (South
Dakota), N.A., Citibank USA, N.A. (collectively,
the "Citibank entities"), two CCSI employees
(Jeanette Brown and John Gillard), and two collec-
tion attorneys (Ross Gelfand and James Cortez), for
copyright infringement under 17 U.S.C. § 501 *et
seq* (Count I); breach of contract (Counts II and

III); and common law fraud (Count IV). FM seeks
monetary and equitable relief as a result of defend-
ants' improper use of a copyrighted debt collection
program FMI developed and owns.

   Citigroup and the Citibank entities move to dis-
miss for lack of standing and personal jurisdiction
under Fed.R.Civ.P. 12(b)(1) and 12(b)(2). CCSI,
Citigroup, the Citibank entities, Brown, and Gillard
move to dismiss Count IV under Fed.R.Civ.P.
12(b)(6) and 9(b). Brown and Gillard move to dis-
miss Counts I and II under Fed. R. Civ. P. 12(b)(6)
and 12(c).

### I. BACKGROUND

   FMI is a software developer that created TU-
CANS, a software program utilized in the debt col-
lection industry. In 2001, CCSI, acting on behalf of
Citigroup, contracted with FMI to acquire rights to
use TUCANS for its debt collection needs. The ten-
year Vendor Services Agreement acknowledged
FMI's copyright, and provided that FMI would de-
velop and maintain systems to allow CCSI and its
agents to transfer file information to and from FMI
for TUCANS. The agreement required CCSI's debt
collection attorneys to sign a licensing agreement,
which prohibited attorneys from accessing the sys-
tem after the termination of the licensing agree-
ment.

   On July 2, 2003, CCSI notified FMI that it de-
sired to cancel their contract to utilize a similar
software system designed by another party. This
cancelled the agreement between the parties, and
constituted a self-termination of FMI's licensing
agreement with CCSI attorneys. On September 3,
2003, CCSI requested and received permission
from FMI to re-utilize TUCANS and its systems
until December 2003. In consideration, FMI agreed
to be paid the same rate as under the original con-
tract. CCSI then stopped utilizing TUCANS alto-
gether in May 2005.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4335264 (N.D.Ill.)
**(Cite as: Slip Copy)**

FMI contends that after CCSI ceased using the FMI system, FMI informed attorneys affiliated with CCSI that the licensing agreements were terminated and that attorneys could no longer access the software or otherwise use data from the system. FMI alleges CCSI encouraged its collection attorneys to ignore this directive; and to continue using the software after the licensing agreement terminated. This continued use purportedly violated FMI's copyright and contractual rights. FMI further alleges CCSI and/or Citigroup knowingly authorized and facilitated their agents' continued use of the software in violation of FMI's copyright and contractual rights. Additionally, FMI asserts that CCSI and its agents improperly removed accounts from the FMI system to the new system in order to circumvent payment to FMI.

## II. ANALYSIS

### A. Citigroup and the Citibank Entities' Motion to Dismiss

**\*2** Citigroup and the Citibank entities argue FMI lacks standing to sue them because there is no causal link alleged between the alleged injuries and their purportedly illegal conduct.

On a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), all well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn in FMI's favor. *Transit Exp. Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir.2001). FMI bears the burden of establishing that the jurisdictional requirements have been met. *Kontos v. Dep't of Labor,* 826 F.2d 573, 576 (7th Cir.1987). However, the degree of proof grows concomitantly with the stage of the litigation, with general allegations of injury usually sufficient to demonstrate standing at the pleading stage.*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

To satisfy the Article III standing requirements, FMI must show: (1) that it has suffered "injury in fact"; (2) that the injury is fairly traceable to defendants' actions; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan,* 504 U.S. at 560-61);*Plotkin v. Ryan,* 239 F.3d 882, 884 (7th Cir.2001).

CCSI, a wholly owned subsidiary of Citigroup, allegedly operated FMI's TUCANS system for the benefit of Citigroup. Citigroup argues that the only direct allegations against it involve its ability to control CCSI and failure to assert this control. FMI alleges that Citigroup had apparent ability to control CCSI and that CCSI operated its debt collection services (and used the TUCANS system) for Citigroup's benefit. The allegations repeatedly state that CCSI acted to benefit Citigroup as its agent, not simply as a subsidiary operating on its own independent basis. FMI also alleges Citigroup was aware of the illegal nature of the activities of CCSI attorneys. Citigroup allegedly played an active part in infringing FMI's software. Construing these allegations in FMI's favor, the claims against Citigroup are sufficient to satisfy standing requirements.

As for the Citibank entities, the allegations are more obscure. At the outset, FMI states that all of the Citibank entities are to be referred to collectively as "Citigroup." However, FMI distinguishes the function of the banks from Citigroup by stating that CCSI engaged in debt collection on behalf of Citibank (South Dakota), N.A., and Citigroup, Inc. FMI alleges that CCSI collects debt for Citibank (South Dakota), N.A., a national bank that issues credit cards, and Citibank USA, N.A. transferred its investment in Citibank (South Dakota), N.A., to Citigroup in 2006. While a broad construction of these allegations links Citibank (South Dakota), N.A. to CCSI's debt collection business and FMI's purported injury, the complaint is void of any relationship between Citibank F.S.B. or Citibank USA, N.A. and CCSI or its business, or how those entities have any involvement with the underlying allega-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                   Page 3
Slip Copy, 2007 WL 4335264 (N.D.Ill.)
**(Cite as: Slip Copy)**

tions. The purported injury incurred as a result of CCSI's debt collection business cannot be fairly traced to either Citibank F.S.B. or Citibank USA, N.A. The allegations against them are not supported by more than speculation. *Plotkin v. Ryan,* 239 F.3d 882, 884-85 (7th Cir.2001). Citibank F.S.B. and Citibank USA are therefore dismissed because injuries cannot be traced to them. Accordingly, the court need not reach the alternative argument that dismissal is required for lack of personal jurisdiction.

## B. CCSI, Citigroup, Citibank (South Dakota), N.A., Brown, and Gillard's Motion to Dismiss Count IV

*3 CCSI, Citigroup, Citibank (South Dakota), N.A., Brown, and Gillard move to dismiss FMI's fraud claim under Fed.R.Civ.P. 12(b)(6), or, in the alternative, Fed.R.Civ.P. 9(b). To state a claim for common law fraud under Illinois law,[FN1] FMI must allege (1) defendants made a statement; (2) of a material nature; (3) which was untrue; and (4) was known by defendants to be untrue, or was made in culpable ignorance of its truth or falsity; (5) was made for the purpose of inducing reliance by FMI; (6) was actually relied on by FMI; and (7) resulted in FMI's injury. *Johnson v. George J. Ball, Inc.,* 248 Ill.App.3d 859, 867, 187 Ill.Dec. 634, 617 N.E.2d 1355 (Ill.1993). To avoid dismissal under Rule 12(b)(6), FMI must allege enough facts to state a claim to relief that is plausible-rather than merely speculative-on its face.*Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *EEOC v. Concentra Health Care Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007). FMI's fraud claim is subject to a heightened pleading requirement. Fed.R.Civ.P. 9(b); *Davis v. G.N. Mortgage Corp.,* 396 F.3d 869, 883 (7th Cir.2005). FMI must plead its claim with particularity by providing "the who, what, when, where, and how" of the purported fraud. *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago,* 415 F.3d 601, 605 (7th Cir.2005) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)).

FN1. The parties do not dispute that Illinois law governs FMI's fraud claim.

FMI premises its fraud allegations on two communications. In the first communication, FMI states that it received a letter from CCSI advising that CCSI was evaluating other system providers to replace FMI. In the letter, CCSI indicated that "should the new system/process [replace FMI] ... we will ensure you are paid the fee required by the contract with respect to accounts that were processed on your (FMI) system."Compl. at Ex. U. The second communication is another letter from CCSI, advising FMI that it was indeed replacing FMI's software, and that CCSI "agrees to pay FMI for any accounts processed on Tucans after [September 5, 2003] at the same rate set out in the agreement."*Id.* at Ex. F. FMI alleges that statements contained in these letters were false. However, FMI does not identify which statements contained in these letters were false.

FMI alleges the letters were untrue because CCSI eventually removed account information from TUCANS and used a new system, thereby terminating further payments to FMI. By stating that "the new system will replace your process on a going forward basis," FMI argues CCSI misrepresented that it would not remove accounts already placed with FMI. Pl. Resp. at 3. However, there is nothing in the CCSI letters that supports this allegation. Rather, CCSI's letters only state CCSI was seeking to replace FMI with another system, and CCSI would pay for any accounts *processed* through TUCANS. FMI fails to plead with particularity the statements that were untrue.

## C. Brown and Gillard's Motion to Dismiss Counts I and II

*4 Brown and Gillard move to dismiss the copyright infringement (Count I) and breach of contract (Count II) claims because FMI offers no basis to find them individually liable. FMI concedes that Brown and Gillard cannot be liable under

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 4
Slip Copy, 2007 WL 4335264 (N.D.Ill.)
**(Cite as: Slip Copy)**

the breach of contract claim. Accordingly, Count II is dismissed as to them.

Brown and Gillard move to dismiss the copyright infringement claim under Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standard applied to Rule 12(b)(6) claims.*Guise v. BWM Mortg., LLC,* 377 F.3d 795 (7th Cir.2004). FMI must allege sufficient facts to state a claim to relief that is plausible. *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *EEOC v. Concentra Health Care Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007). A Rule 12(c) motion will only be granted if FMI cannot prove any facts to support a claim for relief and movants demonstrate there are no material issues of fact to be resolved. *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 718-19 (7th Cir.2002). The court may consider documents attached as exhibits to pleadings or incorporated by reference in the pleadings without converting the motion to a summary judgment motion. *United States v. Wood,* 925 F.2d 1580, 1581-82 (7th Cir.1991).

FMI alleges that Brown and Gillard engaged in unauthorized infringement as "agent[ ] servants and employees of CCSI."Compl. ¶ 57. However, for personal liability to extend to Brown and Gillard as corporate officers, a special showing must be made that they acted willfully and knowingly, and personally participated in the infringing activities or otherwise used CCSI to carry out their own deliberate infringement. *The Drink Group, Inc. v. Gulfstream Communications, Inc.,* 7 F.Supp.2d 1009, 1010 (N.D.Ill.1998) (Norgle, J.) (citing *Dangler v. Imperial Mach. Co.,* 11 F.2d 945, 947 (7th Cir.1926)). The special showing standard is not met when individual defendants have done nothing beyond the scope of their duties as officers and the corporation was not organized to permit the individual defendants to profit from infringement or hide personal liability. *Peaceable Planet Inc. v. Ty, Inc.,* 185 F.Supp.2d 893, 896 (N.D.Ill.2002) (Darrah, J.) (citing *Powder Power Tool Corp. v. Powder Actu-*

*ated Tool Co.,* 230 F.2d 409, 414 (7th Cir.1956)). The copyright infringement allegations against Brown and Gillard pertain to their acts as CCSI corporate officers only. Without more, the special showing to extend personal liability to them for infringement cannot be met. *See, e.g., Drink Group,* 7 F.Supp.2d at 1010-11 (absent allegations that defendants were motivated by some improper purpose or acting outside the scope of their corporate duties, special showing cannot be met).

Notwithstanding this deficiency, FMI argues that it alleges upon information and belief that Brown and Gillard *may* have acted outside the scope of their employment, insofar as FMI's president, Michael Friedman, testified about the possibility in a deposition. CCSI Ans. Ex. A at 168:2-11. In support of Friedman's theory, he testified that: "I don't think Citigroup as the employer would necessarily want Mr. Gillard or Ms. Brown ... to go ahead and inform attorneys to go ahead and violate the copyright law under their normal employment directives ... but on the same token, they may very well be totally behind that issue."*Id.* at 168:15-23.Notably, Friedman testified that his belief that Brown and Gillard may have acted beyond their scope of employment was "conjecture." *Id.* at 164:24-165:8.

**\*5** This testimony does not constitute adequate fact pleading, and is speculation precluded under *Twombly.* 127 S.Ct. at 1965. Friedman's testimony does not proffer any concrete factual allegations that Brown and Gillard infringed on FMI's copyright for some improper personal purpose or that they acted outside the scope of their employment.

**V. CONCLUSION**

Citibank Federal Savings Bank, Citibank USA, N.A., Jeanette Brown, and John Gillard are dismissed from this case. Count IV is dismissed as to all remaining defendants.

N.D.Ill.,2007.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4335264 (N.D.Ill.)
**(Cite as: Slip Copy)**

FM Industries, Inc. v. Citicorp Credit Services, Inc.
Slip Copy, 2007 WL 4335264 (N.D.Ill.)

END OF DOCUMENT