# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HYPERQUEST, INC.,

                Plaintiff,

        v.

NUGEN I.T., INC., and DAYLE PHILLIPS,

                Defendants.

Case No. 1:08-cv-00485

**Judge Charles R. Norgle**
**Magistrate Judge Cole**

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
## TO COMPEL PRODUCTION OF RULE 26(a)
## DISCLOSURE DOCUMENTS AND FOR ENTRY OF PROTECTIVE ORDER

Come now, the Defendants, NuGen I.T., Inc. and Dayle Phillips (hereafter collectively "NuGen"), and submit this Response to Plaintiff HyperQuest, Inc.'s Motion to Compel Production of Rule 26(a) Disclosure Documents and for Entry of Protective Order (ECF 51). Plaintiff's Motion should be denied.  HyperQuest's Proposed Protective Order is insufficient to protect NuGen's confidential and proprietary information because HyperQuest's lead counsel is the wife of its president.  In support if its Response, NuGen submits:

    1.    This is an action for copyright infringement brought by HyperQuest against NuGen relating to computer software that was developed and designed primarily for the electronic processing of insurance claims.  (ECF 1, HyperQuest's Complaint).

    2.    HyperQuest and NuGen are direct competitors in the same industry and both provide internet-based technology products to insurance companies.  (ECF 51, HyperQuest's Motion to Compel, at ¶ 4).

    3.    HyperQuest has served expansive requests for production of documents, including specific requests for marketing materials and NuGen's responses to requests for proposal that

contain proprietary, confidential, private, or commercially sensitive information that provides NuGen with a competitive edge in the marketplace. (Ex. 2, HyperQuest's Request for Production of Documents).

4.     It is anticipated that most, if not all, of the documents exchanged through discovery will contain proprietary, confidential, private, or commercially sensitive information and NuGen intends to designate such documents "Highly Confidential – Attorneys' Eyes Only."

5.     Pursuant to the current draft of the Protective Order, information designated "Highly Confidential – Attorneys' Eyes Only" could be disseminated only to:

> (i) attorneys and non-attorney support staff working for a law firm with an appearance on file for a party in this Action; (ii) outside experts or consultants retained for the purposes of this litigation and their employees in accordance with Paragraph 9 below; (iii) any personnel of the Court and court reporters/videographers retained to record and/or transcribe testimony in this Action, and their assistants engaged in work relating to this Action; and (iv) employees of an independent commercial service as needed to make copies, photographs, or other images of documents or other tangible things.

(HyperQuest's Ex. A at 2-3).

6.     Lead counsel for HyperQuest, Deborah Hogan, is married to HyperQuest's President, Jeffrey Hogan. (HyperQuest's Ex. E, 4/29/08 email chain, at 1-2).

7.     It is believed that Ms. Hogan's father and father-in-law are involved in HyperQuest, Inc.'s business activities, including its negotiation for additional business. (Ex. 1, Phillips Declaration).

## **ARGUMENT**

HyperQuest's lead counsel, Ms. Hogan, has a vested interest in the success of HyperQuest's business through her relationship as wife of HyperQuest's president and daughter and daughter-in-law to two other persons who have negotiated deals on behalf of HyperQuest. If the Motion to Compel is granted, Ms. Hogan will be privy to the proprietary information and

trade secrets of HyperQuest's direct competitor, NuGen. As set forth in HyperQuest's brief, this lawsuit was precipitated by the parties' competition for bids from MetLife. (ECF 51 at ¶ 4). When viewed in the context of Ms. Hogan's inherent financial interest in HyperQuest, her unfettered access to NuGen's confidential, proprietary, and commercially sensitive documents, would raise the appearance of impropriety with respect to her duties as a lawyer in this matter. NuGen's principals are not confident that Ms. Hogan can separate her roles as wife and lawyer, nor that she can "forget" the knowledge she gleans from their files. The fear is not that she *will* violate a duty to the Court, but that she *cannot* be expected to ignore or disregard what she learned as she and her husband make litigation *and* business decisions now and in the future.

The scope of HyperQuest's discovery has, in part, created this dilemma. HyperQuest is seeking confidential trade secrets, processes, marketing, advertising, and proprietary information concerning NuGen's business and operations. If the Motion is granted, Ms. Hogan would be granted unfettered access to the trade secrets of HyperQuest's direct competitor, which, given her unique relationship to HyperQuest, raises the appearance of impropriety. Contrary to HyperQuest's contentions, NuGen's arguments do not rest on the assumption that Ms. Hogan will violate any ethical obligation, but rather on the premise that her involvement raises the appearance of impropriety, which, as an attorney, Ms. Hogan is ethically obligated to avoid. *See Commonwealth Ins. Co. v. Stone Container Corp.,* 178 F.Supp.2d 938, 943 (N.D. Ill. 2001) (quoting *International Business Machines Corp. v. Levin,* 579 F.2d 271, 283 (3d Cir.1978) (stating that "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important a consideration . . . that a court may disqualify an attorney for failing to avoid even the appearance of impropriety")).

While it is assumed that counsel will abide by her ethical obligations, this Court has noted that the examination does not end there, and that the truly relevant inquiry is whether there is a risk of inadvertent disclosure. *See Autotech Technologies Ltd. Partnership v. Automation Direct.com, Inc.*, 237 F.R.D. 405, 407-09 (N.D. Ill. 2006). In evaluating the propriety of access to sensitive information and the potential for inadvertent or accidental disclosure, a court must evaluate "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party." *United States Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (stating that a court must "examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel") (emphasis in original).

Most cases dealing with this issue have examined the question in the context of in-house counsel, but the facts here are analogous to those in *Brown Bag Software*, 960 F.2d 1465. There, the Ninth Circuit affirmed an order imposed on a company's in-house counsel, restricting his review of certain documents produced by the opposing party. The *Brown Bag* court concluded that personnel – even attorneys – involved in "competitive decision-making" for a company should be barred from accessing a litigation adversary's confidences. *Brown Bag*, 960 F.2d at 1470. Two competing factors must be balanced to determine whether precluding certain persons from reviewing specific types of documents or information is necessary: (1) the risk that the disclosing party's confidential information may be disclosed if certain persons are allowed to review it; and (2) the extent to which the ability of the party seeking the discovery to make its case will be impaired by the protective order's restriction. *See id.* at 1470-72. Here, both factors weigh strongly in favor of restricting Ms. Hogan's access.

The risk that NuGen's confidential information may be disclosed if Ms. Hogan is permitted to review it is substantial.  Under the first *Brown Bag* factor, two issues are relevant: the level of sensitivity of the information and the likelihood that the recipient of confidential information could be forced to choose between obeying the protective order and advising her client in connection with its competitive decision-making. *See Brown Bag*, 960 F.2d at 1470-72; *Intel Corp. v. Via Technologies, Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000); *Micron Technology, Inc. v. Mosel Vietlic Corp.*, No. CIV 98-0293-S-LMB, 1999 WL 458168, at *8 (D. Idaho March 31, 1999) (this unpublished case is attached hereto as Ex. 3).

Here, HyperQuest seeks production of confidential information, including marketing materials submitted in response to requests for proposal, all of which were developed by NuGen to provide it with a competitive edge in the insurance software industry.  HyperQuest seeks to obtain the most sensitive information NuGen possesses and NuGen would suffer grievous competitive injury if this information were disclosed to any competitors.  HyperQuest and NuGen are direct competitors and much of the information sought would be of significant commercial assistance to a company like HyperQuest that is involved in the very same internet-based technology industry as NuGen and seeks to provide services to the very same clientele base.

HyperQuest insists that Hogan should be allowed to review this extremely sensitive information despite her marriage to HyperQuest's founder and president.  Courts considering whether to bar counsel from reviewing certain information have repeatedly stated that protective orders are appropriate where an attorney involved in "competitive decision-making" would be placed in the "untenable position" of choosing between advising his client based upon confidential information covered by the protective order and obeying the protective order.

*Brown Bag*, 960 F.2d at 1471; *Intel*, 198 F.R.D. at 530.   If Ms. Hogan obtained access to NuGen's confidences, she inevitably would be placed in the "untenable position" against which federal courts have repeatedly warned; that is, she may ultimately be asked to make decisions for, or provide advice to, HyperQuest or its president, without utilizing NuGen's confidential information in any way.   Even with the best intentions, the risk of Ms. Hogan unintentionally revealing NuGen's most sensitive information to her husband is sufficiently high to create an untenable appearance of impropriety, and is enough to justify barring her access to NuGen's most confidential information.

The second factor in the *Brown Bag* analysis–the impact of a protective order on HyperQuest's ability to prove its case–also supports barring Ms. Hogan from accessing NuGen's highly sensitive materials.   Obviously, HyperQuest can engage an attorney who is unrelated to the corporation, as is the undeniable practice of the overwhelming majority of persons and corporations engaged in litigation.

HyperQuest has characterized Ms. Hogan's involvement in its business as peripheral. This characterization, however, is based solely upon information in Ms. Hogan's own self-serving declaration.   Ms. Hogan's claim that she is not a shareholder may only be technically accurate, given the fact that stock acquired during a marriage is presumed marital property in Illinois and, therefore, subject to division upon dissolution of the marriage (or, presumably, death of Mr. Hogan).   *In re Marriage of Peters*, 760 N.E.2d 586, 588 (Ill. App. Ct. 2001) (citing 750 Ill. Comp. Stat. 5/503(b)(1) (West 2000)).

Moreover, while Ms. Hogan states that she is not generally involved in HyperQuest's business aside from this litigation, there are no guarantees that things will remain that way. Indeed, given her unique relationship to this family-run business, it is not unforeseeable that she

could take on a greater involvement in the day-to-day operations as in-house counsel or in some other capacity.  Further, her marriage to HyperQuest's president also presents the daily possibility that sensitive information could be disclosed if, for example, she were to take work from this case home with her.

It is also not unforeseeable that knowledge gained by Ms. Hogan from NuGen's proprietary information could be used to advise HyperQuest without any "technical" violation of the Protective Order.  Ms. Hogan filed this lawsuit, sought discovery, and has acted aggressively to interfere with HyperQuest's competitor's business.  This may be the best evidence of Ms. Hogan's involvement in the "competitive decision-making" of HyperQuest.  She drafted the Complaint, the discovery, and engaged in motion practice to this Court.  Additional strategy in prosecuting this lawsuit, formulating additional discovery, and advising her husband on litigation and settlement tactics cannot occur in a vacuum.  NuGen respectfully submits that her continued involvement creates an unfair playing field in the parties' respective decision-making.

In sum, Ms. Hogan would not be able to unlearn secrets and information gleaned from NuGen's confidential and proprietary documents.  Allowing her access to such documents and information could jeopardize NuGen's competitive position in the parties' industry.  As for HyperQuest's request that the Court compel NuGen's Rule 26(a) disclosures, there is no basis for such an Order.  NuGen is not in default on any deadlines or in non-compliance with any Court Order.  Based on the foregoing, NuGen respectfully requests that this Court deny HyperQuest's Motion to Compel and for Protective Order and for such other, further, and different relief as this Court deems just and equitable.

Respectfully submitted this 2nd day of May, 2008.

NUGEN I.T., INC. and DAYLE PHILLIPS

By: ___ s/ ***Nora M. Kane*** _____

Mark J. Peterson (*pro hac vice*)
Nora M. Kane (*pro hac vice*)
STINSON MORRISON HECKER LLP
1299 Farnam Street, 15th Floor
Omaha, Nebraska 68102-1818
Phone: (402) 342-1700
Fax:     (402) 930-1701
mpeterson@stinson.com
nkane@stinson.com

And

Monte L. Mann
Kristen Werries Collier
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606-1501
Phone: (312) 419-6900
Fax:     (312) 419-6928
mmann@novackandmacey.com
kwc@novackandmacey.com

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that on this 2nd day of May, 2008, I electronically filed the foregoing Defendants' Response to Plaintiff's Motion to Compel Production of Rule 26(a) Disclosure Documents and for Entry of Protective Order using the CM/ECF system which sent notification of such filing to all counsel of record, properly addressed as follows:

       Deborah Rzasnicki Hogan
       Chad A. Blumenfield
       GOLDBERG, KOHN, BELL, BLACK,
         ROSENBLOOM & MORITZ, LTD
       55 East Monroe, Suite 3300
       Chicago, IL  60603
       deborah.hogan@goldbergkohn.com
       chad.blumenfield@goldbergkohn.com

                                s/ ***Nora M. Kane***
                                Nora M. Kane