# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

HYPERQUEST, INC.,

    Plaintiff,

v.

NUGEN I.T., INC., and DAYLE PHILLIPS,

    Defendants.

Case No. 1:08-cv-00485

**DECLARATION OF
DAYLE E. PHILLIPS**

I, Dayle E. Phillips, declare and state that following is true and correct:

1.    My name is Dayle E. Phillips, and I am a Defendant in the above-captioned action.

2.    I am competent to testify about the facts set forth herein, and I do so from personal knowledge.

3.    During the time period that I was employed by Safelite, Jeffrey Hogan, President of Plaintiff HyperQuest, Inc. became involved in negotiations for the purchase of certain property from Safelite.

4.    I was present in Columbus, Ohio, during some of the negotiations which occurred between Mr. Hogan and Safelite.

5.    During those negotiations, I met Mr. Hogan's father, and his father-in-law. It is my understanding that they were present for the negotiations because they were involved with HyperQuest, Inc.'s business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April _29_, 2008.

Dayle E. Phillips

DB04/811922.0003/426054.1

# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYPERQUEST, INC., | ) |
| | ) |
| Plaintiff, | ) Case No. 08 C 485 |
| | ) |
| v. | ) Judge Charles R. Norgle |
| | ) Magistrate Judge Cole |
| NUGEN I.T., INC., and DAYLE | ) |
| PHILLIPS | ) JURY DEMAND |
| | ) |
| Defendants. | ) |

## HYPERQUEST'S FIRST SET OF DOCUMENT REQUESTS TO DEFENDANTS

Plaintiff, HyperQuest, Inc., by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 34, propounds the following document requests upon Defendants NuGen I.T., Inc. and Dayle Phillips, to be responded to within 30 days.

## DEFINITIONS AND INSTRUCTIONS

1. "NuGen" means NuGen I.T., Inc., including any predecessors, successors, parent corporations, subsidiaries, and/or affiliates, as well as any of its representatives, partners, agents, employees, attorneys, consultants or any other persons or entities acting or purporting to act on its behalf.

2. "Phillips" means Dayle Phillips, as well as any representatives, partners, agents, employees, attorneys, consultants or any other persons or entities acting or purporting to act on his behalf.

3. "Defendants" means NuGen or Phillips.

4. The "Product" means any product that NuGen refers to as its "Enterprise Workflow" software, solution, service or product and any other software product

which NuGen markets as an electronic workflow or claim processing software, solution, service or product.

5.    "HyperQuest" means HyperQuest, Inc., including any predecessors, successors, parent corporations, subsidiaries, and/or affiliates, as well as any of its representatives, partners, agents, employees, attorneys, consultants or any other persons or entities acting or purporting to act on its behalf.

6.    The "Mitchell Litigation" means Case No. GIC 749012 in the Superior Court of California, County of San Diego filed by Mitchell International, Inc.

7.    "Document," as used herein, includes, without limitation, and without regard to the form or manner of recording, any transcript, report, memorandum, record, letter, telegram, wire, overnight letter, pamphlet, brochure, book, minute, microfilm, instruction manual, telephone log, procedural guideline, microfiche, invoice, calendar, appointment book, note, computer printout, or other writing whether printed, handwritten, or otherwise, and whether an original, draft, or copy. "Document" also includes any and all files from any personal computer, note-book or laptop computer, file server, minicomputer, main-frame computer, or other storage device or medium, including but not limited to hard disk drives or backup or archival tapes (whether stored onsite or at an off-site storage facility). This definition encompasses all forms and manifestations of electronically stored and/or retrieved or retrievable electronic information, including but not limited to e-mail. All responsive files which are still on the storage media, regardless of whether they are identified as "erased" or "erased but recoverable," are to be included.

8.    If any document called for by a request is no longer in existence, describe the document and state how, when, why, and by whom it was destroyed.

-2-

9.     "Communication" or "correspondence," as used herein, refers to any oral, written, electronic, or other transmittal of words, thoughts, ideas, or images between or among persons or groups of persons, whether in person, by letter, by telephone, or by any other means.

10.     "Relating to," as used herein, means reflecting, constituting, comprising, containing, setting forth, showing, disclosing, mentioning, describing, explaining, summarizing, pertaining to, concerning or referring to, directly or indirectly.

11.     This request calls for the production of documents in the possession, control, or custody of Defendants or their agents, attorneys, or other persons acting on their behalf.

12.     Defendants shall produce the original copy of each document requested herein, as well as any drafts, revisions, or copies of the same which bear any mark or notation not present on the original, or which otherwise differ from the original.

13.     If Defendants believe that any given document is responsive to more than one paragraph or subparagraph of the requests, Defendants shall produce such document only once in response to the first such request.

14.     All objections or answers to requests for production that fail or refuse to fully respond to any request on the ground of any claim of privilege of any kind whatsoever shall:

> (a)     state the nature of the privilege;
>
> (b)     state the facts relied upon in support of the claim of privilege;
>
> (c)     identify all documents as to which the claim of privilege is asserted;

    (d)  identify all persons having knowledge of any facts relating to the claim of privilege; and

    (e)  identify all persons who have possession of the documents claimed to be privileged.

15.  Documents shall be produced at the offices of Goldberg Kohn, 55 East

Monroe, Suite 3300, Chicago, Illinois 60603, or at such other place as the parties agree.

## REQUESTS

1.  All documents relating to source code for any version of the Product.

2.  All documents relating to object code for any version of the Product.

3.  All screenshots relating to any version of the Product.

4.  All documentation relating to any version of the Product.

5.  All database schemas and stored procedures relating to any version of

the Product.

6.  A forensic copy (or copies) of the hard drive (or drives) on which the

source code resides for any version of the Product.

7.  All marketing materials related to any version of the Product.

8.  All press releases related to any version of the Product.

9.  All documents relating to HyperQuest or Jeffrey Hogan or any products

owned or licensed by HyperQuest.

10.  All contracts with customers of NuGen.

-4-

11. All documents relating to requests for proposal to which NuGen responded, including but not limited to any request for proposal from Metropolitan Life Insurance Company ("Met Life") or American Family Insurance Company ("American Family") or any entitity affiliated with Met Life or American Family.

12. All documents relating to settlement or expert discovery in the Mitchell Litigation.

13. All documents relating to the eDoc Express software.

14. All documents relating to this lawsuit or to any of the claims or defenses asserted in this lawsuit.

15. All documents relating to this lawsuit or to any of the claims or defenses asserted in this lawsuit. All documents relating to any comparison or analysis, or any proposed or contemplated comparison or analysis, whether formal or informal, and regardless of whether completed or not, of whether the Product is or was infringing on software owned by or licensed to Safelite Group Inc. f/k/a Safelite Glass Corp. or HyperQuest.

Dated: April 11, 2008

Respectfully submitted,

HYPERQUEST, INC.

By: _____

One of Its Attorneys

-5-

Deborah Rzasnicki Hogan
Chad A. Blumenfield
GOLDBERG, KOHN, BELL, BLACK,
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe, Suite 3300
Chicago, Illinois 60603
(312) 201-4000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on April 11, 2008, he caused a

copy of the attached **HYPERQUEST'S FIRST SET OF DOCUMENT REQUESTS TO**

**DEFENDANTS** to be served via facsimile and U.S. Mail upon:

>Monte L. Mann
>Kristen Werries Collier
>Novack and Macey LLP
>100 North Riverside Plaza
>Chicago, IL 60606
>
>Mark J. Peterson
>Nora M. Kane
>Stinson Morrison Hecker LLP
>1299 Farnam Street, 15th Floor
>Omaha, Nebraska 68102-1818

Chad A. Blumenfield

# EXHIBIT 3

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 458168 (D.Idaho)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 458168)

▷Micron Technology, Inc. v. Mosel Vitelic Corp.
D.Idaho,1999.
Only the Westlaw citation is currently available.
United States District Court, D. Idaho.
MICRON TECHNOLOGY, INC., Plaintiff,
v.
MOSEL VITELIC CORPORATION and MOSEL
VITELIC, INC., Defendants.
No. CIV 98-0293-S-LMB.

March 31, 1999.

Kirk R Helvie, Moffatt Thomas, Boise, Wm A Streff
Jr, Kirkland & Ellis, Chicago, IL, for Plaintiff.
Paul L Westberg, Boise, Alan H MacPherson,
Skjerven Morrill, San Jose, CA, for Defendant.

ORDER

BOYLE, Magistrate J.
*1 Currently pending before the Court are
Defendants' Motion to Stay (Docket No. 17),
Plaintiff's Motion to Strike under F.R.Civ.P. 12(f)
or for a More Definite Statement under F.R.Civ.P. 12(e)
(Docket No. 26), Plaintiff's Motion for Entry of a
Protective Order under Fed.R.Civ.P. 26(c) (Docket
No. 49), Plaintiff's Motion to Compel Responses to
Interrogatories Nos. 2 and 3 of Micron's First Set of
Interrogatories (Docket No. 54), Defendants' Motion
for Protective Order (Docket No. 70) and Defendants'
Motion for Entry of a Protective Order (Docket No.
92).

Also currently pending before the Court is Plaintiff's
Motion to Strike under F.R.Civ.P. 12(f) or for a more
Definite Statement under F.R.Civ.P. 12(e) (Docket
No. 30, filed in Case No. 98-0294-S-MHW).

Having carefully reviewed the record, and otherwise
being fully advised, the Court enters the following
Order.

I.

BACKGROUND

Micron Technology, Incorporated, a Delaware
corporation with its principal place of business in
Boise, Idaho, is engaged in the business of designing,
distributing and selling semiconductor devices to
providers in the computer industry. Mosel Vitelic
Incorporated is a Taiwanese corporation that
manufactures and imports semiconductor devices into
the United States, which are then sold by a wholly
owned California subsidiary, Mosel Vitelic
Corporation. According to Micron, two of the
semiconductor devices manufactured and sold by
Mosel infringe upon numerous United States Patents
held by Micron. More specifically, Micron maintains
that six of the patents issued to it under the patent
laws of the United States relating to circuit
technology as well as five such patents relating to
process technology have been infringed by Mosel.

On July 17, 1998, Plaintiff Micron filed the instant
action against Defendants Mosel Vitelic Corporation
and Mosel Vitelic Incorporated seeking relief as a
result of the alleged infringement of the six circuitry
patents. On the same day, Plaintiff Micron initiated
an action against the same Defendants seeking relief
relating to the alleged infringement of the five
process patents which was assigned to Hon. Mikel H.
Williams. Thereafter, on July 31, 1998, Defendants
filed an action against Plaintiff in the United States
District Court for the District of Delaware alleging
Micron's infringement of a valid patent held by
Mosel. Finally, on August 21, 1998, Plaintiff
instituted its third action against Defendants by filing
a Complaint before the United States International
Trade Commission. Pursuant to that complaint,
Micron alleged that Mosel had infringed upon four
process technology patents. The four patents at issue
before the ITC are the very same patents at issue in
four of the five patent claims filed in the federal
action originally assigned to Judge Williams.

On December 30, 1998, Judge Williams entered an
order consolidating that case into the instant action.
According to Judge Williams, "consolidating the two
patent infringement actions [filed in the federal
district of Idaho] will appreciably serve the interest of
judicial economy .... [and that] any prejudice,
expense or delay that might occur thereby is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

substantially outweighed by the benefits to be obtained by trying the cases as one action."Order, p. 11, ¶ C (Docket No. 80). As a result, all of the eleven patent claims, six of which relate to circuitry technology while five relate to process technology, are now before the Court in this instant action.

**\*2** Because four of the eleven counts of patent infringement in the instant action are the subject of an action before the ITC, Defendants have moved the Court to stay this action pending final resolution of the action before the ITC. Plaintiff maintains that the stay, as requested by Defendants, is inappropriate and should not be entered by the Court. The matter is fully submitted and ripe for disposition.

II.

ANALYSIS

A. *Defendants' Motion to Stay (Docket No. 17)*

Defendants take the position that, based upon federal law, a stay is mandatory to the extent that patent infringement claims involved in the instant action are also before the ITC. Further, inasmuch as the remaining seven patent infringement claims are substantially legally and factually the same as the patents at issue before the ITC, they should be subject to a court imposed stay as a result of either federal statutory law or this Court's inherent authority to control the resolution of the instant dispute. Plaintiff opposes the relief requested by Defendants as an unwarranted and unjustified attempt to delay its ability to protect its legal rights to valid patents that it holds.

The Congress of the United States has established that:

In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission ..., at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within ... 30 days after the party

is named as a respondent in the proceeding before the commission.

28 U.S.C. § 1659(a) (Supp.1998). Defendants, the respondents in the action before the ITC, have timely moved to stay the instant action. Accordingly, to the extent that the patent infringement claims asserted in the instant action involve the same issues that are before the ITC, the Court is statutorily required to stay those four claims.

Although four of the five process patent infringement claims in the instant action are based upon the same four patents at issue before the ITC, Plaintiff maintains that a stay with respect to those four process patent claims is inappropriate as to issues of damages and willfulness because these issues of patent infringement are not before the ITC. While the ITC does not determine the extent of damages for patent infringement or whether the infringement was willful, section 1659 speaks in terms of staying claims, and not specific issues that are implicated in an individual patent infringement claim. If a court were to conclude that a patent infringement claim filed in a district court was not subject to a motion to stay under section 1659 even though it concerned the alleged infringement of the same patent before the ITC because the ITC was unable to determine the extent and willfulness of damages caused by the infringement, the automatic stay provision of section 1659 would be rendered a nullity.

**\*3** After conducting a careful and thorough study and deliberation on the positions asserted by the respective parties regarding the application of section 1659 to the four process patent infringement claims filed in the instant action, the Court is of the opinion that Defendants' motion to stay those four claims is appropriate. The claims involve the alleged infringement of four process patents held by Plaintiff and as a result issues involved in the instant action are the same as issues that are before the ITC. Accordingly, Defendants' motion to stay the four process patent infringement claims in the instant action that are also before the ITC is granted until such time as the resolution of the ITC action becomes final.

In addition to asserting that the four process patent infringement claims filed in both the instant action as well as the ITC should be stayed, Defendants take the

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 1999 WL 458168 (D.Idaho)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 458168)

position that the fifth process patent claim as well as the six circuitry patents should also be stayed. According to Defendants, although the patents for these remaining seven patent infringement claims are not at issue before the ITC, these seven claims are so related to the four patent infringement claims before the ITC that they implicate substantially similar legal and factual issues. Defendants note that Plaintiff alleges that all of the eleven patents at issue were infringed by two Mosel products and that all of the patents relate to the same basic technology field. As a result of these and other similarities, Defendants take the position that all of the claims involved in the instant action should be stayed.

Plaintiff argues that each of the eleven patents represent separate and distinct property rights, the alleged infringement of which necessarily implicates separate and distinct legal and factual issues. Because of the separate and distinct character of an individual patent and the proof requirements to establish alleged infringement, Plaintiff asserts that the seven remaining individual patent infringement claims in the instant action are separate and distinct from the four patent infringement claims before the ITC. Because Defendants are unable to establish that the seven remaining claims would necessarily involve the same issues before the ITC, a mandatory stay under the provisions of section 1659 is inappropriate.

Defendants have cited legislative history in support of their position that the stay provisions of section 1659 do not require a claim brought in a district court to be based upon the alleged infringement of the same patent at issue before the ITC. Likewise, Plaintiff has cited the Court to legislative history for the proposition that issues before a district court and the ITC are the same only when they involve the resolution of identical legal and factual points. However, after reviewing the language of the statute, as well as positions taken by the respective parties, the Court concludes that while the remaining seven patent infringement claims filed before this Court raise issues that are substantially similar to the issues that will be raised in the patent infringement claims before the ITC, those issues are not the same issues as required by the statute. Accordingly, Defendants' motion to stay the remaining seven patent infringement claims based upon section 1659 is denied.

*4 In addition to citing the Court to section 1659 as authority to enter a stay of the instant proceedings, Defendants have requested the Court to stay the instant matter based upon the Court's inherent power.

The Supreme Court of the United States has clearly indicated that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."*Landis v. North America Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 166 (1936).*"The proponent of a stay bears the burden of establishing its need."*Clinton v. Jones, 520 U.S. 681, 706, 117 S.Ct. 1636, 1650 (1997).* Thus, the moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."*Landis, 299 U.S. at 255, 57 S.Ct. at 166.* The United States Court of Appeals for the Ninth Circuit reviews a stay entered by a trial court based upon an abuse of discretion standard. *Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir.1983).* Accordingly, Defendants must establish that the Court should, in the exercise of its discretion, stay the instant action pending resolution of the claims before the ITC because of judicial efficiency, the burden of going forward with the instant action imposed upon Defendants and the lack of prejudice imposed upon Plaintiff due to a delay in the resolution of this action.

Defendants point out that because of the significant overlap of legal and factual issues between the four patent infringement claims that have been stayed pending the resolution of the ITC action and the seven remaining infringement claims, entering a stay with respect to the seven remaining claims would enhance judicial economy and potentially streamline future proceedings in the instant action once the ITC action is resolved. Defendants assert that staying the instant action until after the ITC action is resolved would provide the Court with the benefit of the findings, conclusions and views of the ITC. Further, Defendants take the position that they are currently prejudiced by defending against multiple actions and that a stay in the instant proceedings would allow them to apply their resources to defending the ITC

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 1999 WL 458168 (D.Idaho)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 458168)**

action. Defendants also assert that Plaintiff would not be prejudiced by a stay of the remaining seven claims in the instant action because it will obtain a timely resolution of the claims before the ITC.

In response, Plaintiff maintains that denying the stay requested by Defendants would actually increase judicial efficiency while a stay would delay the resolution of the seven remaining patent infringement claims. Plaintiff points out that the likely date of completion of the ITC investigation would be September of 1999. If, as Defendants request, all of the claims in the instant action were stayed until the final outcome of the ITC, the resolution of the instant dispute would likewise be extended. However, Plaintiff argues that if the remaining seven patent infringement claims were allowed to proceed, they would be ready for trial and ultimate resolution much earlier. Plaintiff challenges Defendants' contention that a stay is warranted to streamline multiple litigation fronts. As an illustration of what it argues is an inconsistency in this regard, Plaintiff points out that Defendants have filed an action against Plaintiff in the federal district of Delaware. Inasmuch as Defendants have initiated additional litigation, Plaintiff characterizes any assertion that Defendants are unable to dedicate full and adequate resources to maintain separate lawsuits as unconvincing. Plaintiff argues that a stay would prejudice its interests because each passing month allows Defendants to infringe upon their patented technology and gain unfair advantages in a highly competitive marketplace. Finally, Plaintiff asserts that, although presently financially viable, each passing month poses a continuing risk that Defendants could falter financially rendering any potential award practically impossible to recover.

**\*5** Defendants counter Plaintiff's assertions by indicating that a stay would not deprive Plaintiff of full and complete relief in the instant action. Defendants point out that Plaintiff's position that each month of delay causes additional damages is not supported by the record inasmuch as Plaintiff has not sought a preliminary injunction. *See GenDerm Corp. v. Ferndale Labs., Inc.,* 32 U.S.P.Q.2d 1567, 1577 (E.D.Mich.1994) (delay in filing for preliminary injunction suggests no irreparable harm); *Abbot Labs. v. Selfcare Inc.,* 17 F.Supp.2d 43, 50 (D.Mass.1998) ("Delay in seeking preliminary injunctive relief is a factor tending to show the absence of irreparable

injury because it is an act 'incompatible with the emphasis on the [patentee's] right to exclude that is the basis for the presumption." ' *GenDerm Corp.,* 23 U.S.P.Q.2d at 1575 (quoting *T.J. Smith and Nephew Ltd. v. Consolidated Medical Equip., Inc.,* 821 F.2d 646, 648 (Fed.Cir.1987)).

Defendants also assert that a delay would not subject Plaintiff to continued injury because Plaintiff has admitted that it does not use the fifth process patent that was not included in the ITC action and that the record does not establish that Plaintiff uses the six circuitry patents it holds. Anderson Decl., p. 2, ¶ 3 (Docket No. 42);*Cf. High Tech Med. Instrumentation v. New Image Indus., Inc.,* 49 F.3d 1551, 1556 (Fed.Cir.1995) (presumption of irreparable harm rebutted because no evidence that party practiced patented invention).

Having thoroughly considered the different positions taken by the respective parties, as well as the existing record, the Court is of the opinion that Defendants' motion to stay the instant action in its entirety should be denied. The Court concludes that Defendants have not established that a stay of the instant proceedings is necessary to prevent undue hardship or injustice. However, the Court is also of the opinion that the seven patent infringement claims filed before this Court should not be resolved separately from the four claims that are subject to the stay under section 1659. Accordingly, discovery relating to the seven remaining claims shall be allowed to proceed.

While Defendants' motion for stay on the remaining seven patent infringement actions shall not be granted, maintenance of the instant action shall be limited to discovery relating to the seven patent infringement claims not subject to Court stay. Once the Court is provided notice that the ITC action has been resolved, the Court shall schedule the instant dispute for a conference to set a trial date, final discovery shall be allowed to be completed and the parties shall have the opportunity to file dispositive motions, and otherwise proceed toward resolution of this action.

Accordingly, to the extent Defendants move the Court to stay the four patent infringement actions filed in the instant action that are also the subject of the ITC action, the motion is granted. However, the motion to stay the remaining claims now pending

before this Court is denied to the extent that discovery shall be allowed to proceed on claims not pending before the ITC.

B. *Plaintiff's Motion to Strike Under F.R.Civ.P. 12(f) or for a More Definite Statement Under F.R.Civ.P. 12(e) (Docket No. 26)*

**\*6** Plaintiff moves the Court to strike certain affirmative defenses and counter-claims asserted by Defendants on the ground that Defendants failed to plead the defenses and counter-claims with sufficient specificity to allow Plaintiff to respond. Subsequent to the filing of the instant motion, Defendants have filed an Amended Answer addressing the concerns raised by Plaintiff pursuant to the instant motion. Accordingly, after reviewing the positions taken by the respective parties subsequent to the filing of the Amended Answer, the instant motion is denied as moot.

C. *Plaintiff's Motion for Entry of a Protective Order Under Fed.R.Civ.P. 26(c) (Docket No. 49) and Defendants' Motion for Entry of a Protective Order (Docket No. 92)*

Plaintiff moves the Court for the entry of a protective order which would allow the disclosure of sensitive and confidential information to Defendants' litigation counsel but prevent such disclosures to members of Defendants' in-house litigation team. According to Plaintiff, the instant protective order is necessary in order to prevent unintentional disclosures of highly sensitive and valuable information to its competitors in the marketplace. Defendants take the position that the terms of the protective order proposed by Plaintiff are unduly restrictive and that the Court should enter the protective order that they have proposed. According to Defendants, certain members of the in-house litigation teams of both respective parties should be provided access to the confidential information held by each side that is central to the resolution of the instant patent dispute. Thus, according to Defendants the Court may allow each party to have the access to sensitive information that is required in the instant action while guarding against unintentional disclosures because access could be limited to certain members of their corporate in-house legal department.

The United States Court of Appeals for the Ninth

Circuit "reviews a district court's rulings concerning discovery for an abuse of discretion."*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469 (9th Cir.1992) (citing *Ah Moo v. A.G. Becker Paribas, Inc.*, 857 F.2d 615, 619 (9th Cir.1988)).Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any manner, not privileged, which is relevant to the subject matter involved in the pending action ... [and that] [t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."However, "Rule 26(c)... explicitly authorizes the district court to protect parties from 'undue burden or expense' in discovery by ordering 'that a trade secret or other confidential research, development, or commercial information not be [revealed] or be [revealed] only in a designated way." ' *Id.* at 1469-70 (quoting Fed.R.Civ.P. 26(c), (c)(7)).

In determining when a protective order is appropriate in order to protect confidential information, "[t]he issue entails conflicting interests. On the one hand, parties seeking discovery are entitled to all information 'reasonably calculated to lead to the discovery of admissible evidence,'... an intentionally broad mandate. On the other hand, responding parties are entitled to protection from 'undue burden' in discovery, including protection from misuse of trade secrets by competitors. These conflicting interests suggest that a balancing test will best resolve protective order disputes such as the one here."*Brown Bag Software,* 960 F.2d at 1470 (citations omitted). As a result, in order to resolve the respective motions for protective order, the Court must balance the interest in discovering information against the interest of protecting sensitive information held by the party moving for a protective order. An important reality to note in determining the appropriateness of a protective order is the realization that "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."*Fed. Trade Comm'n v. Exxon Corp.,* 636 f.2d 1336, 1351 (D.C.Cir.1980).

**\*7** According to Plaintiff in this instant action, the confidential information which is the subject of their motion for protective order is vital and central to its ability to maintain a competitive edge in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 6
Not Reported in F.Supp.2d, 1999 WL 458168 (D.Idaho)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 458168)

marketplace. They point out that such information was acquired only after great effort and expense. Based on the importance of protecting against inadvertent disclosure, as well as disclosure to individuals who would later be placed in the difficult position to suppress confidential information when the individuals were planning competitive strategies against Micron, Plaintiff takes the position that disclosure should be limited to members of Defendants' litigation team that would not be placed into such a situation. Plaintiff points out that a member of the in-house legal department that Defendants have identified as one that should be allowed access to confidential materials is also a Vice President of Intellectual Property whose duties include decisions on litigation strategies as well as competitive decision making responsibilities. Based upon the identities and corporate responsibilities of those that Defendants have indicated should be allowed access to Plaintiff's confidential information, as well as the proposed safeguards and scope of disclosure, Plaintiff takes the position that disclosure should be limited to members of Defendants' litigation group. Finally, Plaintiff asserts that while Defendants maintain that in-house members of their legal department must be granted access to confidential information in order to make informed choices regarding litigation and settlement strategies, they have not established why it cannot effectively create strategies when such information is disclosed to members of Defendants' outside litigation group.

Plaintiff's proposed protective order is characterized as a highly restrictive measure aimed at defeating Defendants' ability to discover information that is central to the resolution of the instant dispute and to prevent them from determining the direction that should be taken by requiring them to make key determinations without the benefit of considering all of the relevant facts. In order to prevent against the unintentional disclosures that Plaintiff fear, as well as allow them the opportunity to discover highly relevant and necessary information, Defendants propose that confidential information could be provided to their in-house legal department only at the supervision of their outside litigation team and that the in-house attorneys and corporate representatives would not be allowed to take possession of the material. Further, Defendants propose that the sensitive information Plaintiff seeks to protect could only become discoverable once the information is referenced in a court filing, was

involved in a patent claim chart or is contained on invention-related documents, such as inventor diaries or journals.

In *Brown Bag Software,* the Ninth Circuit "turn[ed] to *U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed.Cir.1984), as the leading authority on protective orders distinguishing between outside and in-house counsel."960 F.2d at 1470. In *U.S. Steel,* the United States Court of Appeals for the Federal Circuit concluded that in order to resolve the risk of improper use of confidential information "a court should examine the factual circumstances of any counsel's relationship to the party demanding access."*Id.* Important to the Federal Circuit in *U.S. Steel* was "whether in-house counsel was involved in 'competitive decisionmaking.' ' *Id.* Competitive decisionmaking was described "as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel,* 730 F.2d 1465, 1486 n. 3. "Thus, proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by any counsel, whether in-house or retained. Further, the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures factors into decisions on the propriety of such protective orders." *Brown Bag,* 960 F.2d at 1470.

**\*8** Having given careful and deliberative review to the resolution of the instant conflicting motions for protective orders, the Court concludes that Plaintiff's proposed protective order restricting access to confidential information only to outside litigation counsel should be granted. Plaintiff seeks to protect against unintended disclosures of highly sensitive and valuable confidential information in order to maintain a competitive edge in the computer industry. However, in addition to Plaintiff's compelling reason in support of its proposed protective order, Defendants have offered an important and compelling justification to allow access to certain members of its in-house legal department in order to allow them the opportunity to make well informed litigation and settlement decisions in light of all of the applicable relevant facts. Viewing the conflicting

Case 1:08-cv-00485    Document 55-2    Filed 05/02/2008    Page 18 of 19

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 1999 WL 458168 (D.Idaho)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 458168)

compelling justifications offered by the respective parties, the Court concludes that access should be limited to outside litigation counsel in order to achieve an appropriate balance of the competing interests. As pointed out by Plaintiff, individuals that Defendants seek to gain access to confidential information are engaged in competitive decision-making that, if allowed access to such information, would be required to compartmentalize and suppress such information. Because both parties are represented by highly competent and experienced litigators that will be in a position to advise their clients of litigation and settlement strategies with full knowledge of all of the relevant facts, the Court concludes that access to confidential information by members of Defendants' in-house legal department is inappropriate in the instant action. Accordingly, Plaintiff's motion for protective order is granted and Defendants corresponding motion is denied.

Plaintiff shall submit an original Protective Order, consistent with this Order, for signature along with copies for dissemination to the respective parties within ten days after receipt of this Order.

D. *Plaintiff's Motion to Compel (Docket No. 54)*

Plaintiff moves the Court to compel Defendants to answer interrogatories propounded pursuant to its First Set of Interrogatories, specifically, numbers two and three. Pursuant to the discovery requests, Plaintiff seeks information relating to positions asserted in Defendants Answer and Counter-Claim to Plaintiff's Complaint. Plaintiff points out that it is seeking the information that Defendants presently possess that support the contentions included in their pleadings before this Court.

Defendants take the position that Plaintiff is attempting to improperly narrow the issues before the Court by requiring them to answer discovery requests that will require them to take premature legal and factual positions. In this regard, Defendants assert that the discovery requests are premature and that the Court should allow additional time within which to conduct further discovery before requiring it to presently take practically irreversible legal and factual positions.

**\*9** Plaintiff asserts that it is not attempting to lock Defendants into legal or factual positions, but is simply seeking to require Defendants to provide discovery that indicates the factual support for matters that are contained in the pleadings before this Court.

As previously noted, Rule provides that "[p]arties may obtain discovery regarding any manner, not privileged, which is relevant to the subject matter involved in the pending action ... [and that] [t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."Fed.R.Civ.P. 26(b)(1). Defendants have not objected to the discovery sought by Plaintiff as seeking irrelevant information. After reviewing the positions taken by the respective parties, as well as a representation by Plaintiff that it is not attempting to force Defendants to take factual or legal positions that they would not be able to supplement, correct or modify at a later date, the Court concludes that Defendants should be required to answer Plaintiff's discovery requests. Accordingly, Plaintiff's motion to compel is granted and Defendants shall respond to such requests within fifteen days after receipt of this Order.

E. *Defendants' Motion for Protective Order (Docket No. 70)*

Defendants move the Court to enter a protective order pursuant to Rule 26(c) which indicates that notices of depositions served prior to the disposition of Defendants' motion to stay are premature and that the notices are oppressive and unduly burdensome prior to the resolution of the ITC action. Accordingly, Defendants move the Court to postpone the depositions until such time as the Court rules on the motion to stay and the hearing before the ITC is completed.

Inasmuch as the Court has determined that the four patent infringement claims filed both in the instant action as well as before the ITC shall be stayed pending resolution of the ITC dispute. To the extent that Defendants' motion for protective order seeks to prevent the taking of deposition that are related to those four claims, the motion is granted. However, the Court has also determined that the remaining seven claims filed in the instant action do not implicate the same issues as the claims before the ITC and has concluded that, in its discretion,

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 458168 (D.Idaho)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 458168)**

Page 8

discovery on those remaining seven claims should not be stayed pending resolution of the ITC action. As a result, to the extent that Plaintiff's notices of deposition relate to the remaining seven patent infringement claims not subject to the Court's stay, the instant motion for protective order is denied.

III.

ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Defendants' Motion to Stay (Docket No. 17) is GRANTED IN PART AND DENIED IN PART.

2. Plaintiff's Motion to Strike under F.R.Civ.P. 12(f) or for a More Definite Statement under F.R.Civ.P. 12(e) (Docket No. 26) is DENIED AS MOOT.

3. Plaintiff's Motion for Entry of a Protective Order under Fed.R.Civ.P. 26(c) (Docket No. 49) is GRANTED.

*10 4. Plaintiff's Motion to Compel Responses to Interrogatories Nos. 2 and 3 of Micron's First Set of Interrogatories (Docket No. 54) is GRANTED.

5. Defendants' Motion for Protective Order (Docket No. 70) is GRANTED IN PART AND DENIED IN PART.

6. Defendants' Motion for Entry of a Protective Order (Docket No. 92) is DENIED.

7. Plaintiff's Motion to Strike under F.R.Civ.P. 12(f) or for a more Definite Statement under F.R.Civ.P. 12(e) (Docket No. 30, Case No. CV 98-294-S-MHW) is DENIED AS MOOT.

D.Idaho,1999.
Micron Technology, Inc. v. Mosel Vitelic Corp.
Not Reported in F.Supp.2d, 1999 WL 458168 (D.Idaho)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.