**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

HYPERQUEST, INC.,

        Plaintiff,

v.

NUGEN I.T., INC., and DAYLE PHILLIPS,

        Defendants.

Case No. 1:08-cv-00485

**Judge Charles R. Norgle**
**Magistrate Judge Cole**

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**

Come now, the Defendants, NuGen I.T., Inc. and Dayle Phillips (hereafter collectively "NuGen"), and submit this Memorandum in support of their Motion to disqualify HyperQuest counsel Deborah Hogan and her law firm Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd. (hereafter collectively "Hogan"). A protective order is insufficient to protect NuGen's confidential and proprietary information from the substantial risk of inadvertent disclosure because HyperQuest's lead counsel is the wife of its president and, therefore, the unique facts of this case merit her disqualification. In support if its Motion, NuGen submits:

    1.    This is an action for copyright infringement brought by HyperQuest against NuGen relating to computer software that was developed and designed primarily for the electronic processing of insurance claims. (ECF 1, HyperQuest's Complaint).

    2.    HyperQuest and NuGen are direct competitors in their industry and both provide internet-based technology products to insurance companies. (ECF 51, HyperQuest's Motion to Compel, at ¶4).

3.      HyperQuest served expansive Requests for Production of Documents, including specific requests for marketing materials and NuGen's responses to requests for proposal that contain proprietary, confidential, private, or commercially sensitive information that provides NuGen with a competitive edge in the marketplace.  (ECF 55 at Ex. 2, HyperQuest's Request for Production of Documents).

4.      It is anticipated that most, if not all, of the documents exchanged through discovery will contain proprietary, confidential, private, or commercially sensitive information and NuGen intends to designate such documents "Highly Confidential – Attorneys' Eyes Only."

5.      Pursuant to the Protective Order, information designated "Highly Confidential – Attorneys' Eyes Only" could be disseminated only to:

> (i) attorneys and non-attorney support staff working for a law firm with an appearance on file for a party in this Action; (ii) outside experts or consultants retained for the purposes of this litigation and their employees in accordance with Paragraph 9 below; (iii) any personnel of the Court and court reporters/videographers retained to record and/or transcribe testimony in this Action, and their assistants engaged in work relating to this Action; and (iv) employees of an independent commercial service as needed to make copies, photographs, or other images of documents or other tangible things.

(ECF 57 at 2-3).

6.      Lead counsel for HyperQuest, Deborah Hogan, is married to HyperQuest's President, Jeffrey Hogan.  (ECF 51 at Ex. E, 4/29/08 email chain, at 1-2).

7.      It is believed that Ms. Hogan's father and father-in-law are involved in HyperQuest, Inc.'s business activities, including its negotiation for additional business, and possibly as board members and / or stockholders.  (ECF 55 at Ex. 1, Phillips Declaration).

## ARGUMENT

### I.    The Appearance of Impropriety Merits Disqualification of Ms. Hogan and her firm.

HyperQuest's lead counsel, Ms. Hogan, has a unique and vested interest in the success of HyperQuest's business and this litigation because of her relationship as wife to HyperQuest's president and daughter and daughter-in-law to two other persons who have negotiated business arrangements on behalf of HyperQuest.  Without a protective order, Ms. Hogan will be privy to proprietary information and trade secrets of HyperQuest's direct competitor, NuGen.  Ms. Hogan's access to this information not only raises the appearance of impropriety, but also places her in the untenable position of having knowledge helpful to her family's business without the freedom to discuss or advise him utilizing that knowledge.

This action was precipitated by the parties' competition for bids from MetLife.  (ECF 51 at ¶4).  When viewed in the context of Ms. Hogan's inherent financial interest in HyperQuest, her unfettered access to NuGen's confidential, proprietary, and commercially sensitive documents would raise the appearance of impropriety with respect to her duties as a lawyer in this matter.  It is unlikely that Ms. Hogan can separate her roles as wife and lawyer, and it would be impossible for her to "unlearn" knowledge gleaned from NuGen's confidential and proprietary files. Knowledge Ms. Hogan learned from this case, when set against her intimate relationship as wife to HyperQuest's president, would place her in the untenable position of 1) refusing legal advice for fear of disclosing confidential materials, or 2) improperly or indirectly revealing NuGen's trade secrets.  The fear is not that she *will* violate a duty to the Court, but that she *cannot* be expected to ignore or disregard what she learned as she and her husband make litigation *and* business decisions now and in the future.

"The maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important a consideration . . . that a court may disqualify an attorney for failing to avoid even the appearance of impropriety." *International Business Machines Corp. v. Levin,* 579 F.2d 271, 283 (3d Cir. 1978). When determining whether to disqualify counsel, the court must balance the right of a party to retain the counsel of its choosing with the necessity of upholding ethical and professional standards. *Freeman v. Chicago Musical Instrument Co.*, 659 F.2d 715, 721-22 (7th Cir. 1982). In certain circumstances, courts have found that an attorney may be disqualified based on the appearance of impropriety alone. *See,* e.g., *Blue Cross & Blue Shield of New Jersey v. Phillip Morris, Inc.*, 53 F.Supp.2d 338, 346 (E.D.N.Y. 1999); *Rosman v. Shapiro*, 653 F.Supp. 1441, 1447 (S.D.N.Y. 1987). NuGen's objections to Ms. Hogan's representation do not rest on the assumption that she *will* violate any ethical obligation, but rather on the premise that her involvement raises the appearance of impropriety, which, as an attorney, Ms. Hogan is ethically obligated to avoid. *See Commonwealth Ins. Co. v. Stone Container Corp.,* 178 F.Supp.2d 938, 943 (N.D. Ill. 2001) (quoting *International Business Machines,* 579 F.2d at 283).

## II.    NuGen's Proprietary Information Would Be Subject to Inadvertent Disclosure.

While it is assumed that counsel will abide by her ethical obligations, this Court has noted that the examination does not end there, and that the relevant inquiry is whether there is a risk of inadvertent disclosure. *See Autotech Technologies Ltd. Partnership v. Automation Direct.com, Inc.*, 237 F.R.D. 405, 407-09 (N.D. Ill. 2006). In evaluating the propriety of access to sensitive information and the potential for inadvertent or accidental disclosure, a court must evaluate "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party." *United States Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.

1992) (stating that a court must "examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel.") (emphasis in original); *but see American Hardware Manufacturers Ass'n v. Reed Elsevier, Inc.,* 2004 WL 2108403 (N.D. Ill. September 21, 2004) (denying motion to disqualify attorney related as son and brother to client's principal officers without analysis of risks or safeguards).

In many cases, this issue arises in the context of in-house counsel, and the facts here are analogous to those in *Brown Bag Software*, 960 F.2d 1465. There, the Ninth Circuit affirmed an order restricting in-house counsel from review of certain documents produced by the opposing party. The *Brown Bag* court concluded that personnel – even attorneys – involved in "competitive decision-making" for a company should be barred from accessing a litigation adversary's confidences. *Id.* at 1470. Two competing factors must be balanced to determine whether precluding certain persons from reviewing specific types of documents or information is necessary: (1) the risk that the disclosing party's confidential information may be disclosed if certain persons are allowed to review it; and (2) the extent to which the ability of the party seeking the discovery to make its case will be impaired by the protective order's restriction. *See id.* at 1470-72. Here, both factors weigh strongly in favor of restricting Ms. Hogan's access to NuGen's documents.

### A.     The Risk of Inadvertent Disclosure of Sensitive Information is Substantial.

The risk that NuGen's confidential information may be disclosed if Ms. Hogan is permitted to review it is substantial. Under *Brown Bag*, two issues are implicated: the level of sensitivity of the information and the likelihood that the recipient of confidential information could be forced to choose between obeying the protective order or intelligently advising her

client in connection with its competitive decision-making. *Brown Bag*, 960 F.2d at 1470-72; *see also Intel Corp. v. Via Technologies, Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000).

As noted, HyperQuest seeks production of confidential information, including marketing materials submitted in response to requests for proposal, all of which were developed by NuGen to provide it with a competitive edge in the insurance software industry. The information sought would be of significant commercial assistance to a competitor such as HyperQuest, and would result in NuGen suffering significant and irreparable competitive injury.

Courts considering whether to bar counsel from reviewing certain information have often held that protective orders are appropriate where an attorney involved in "competitive decision-making" would be placed in the "untenable" position of choosing between advising her client based upon confidential information covered by the protective order and obeying the protective order. *Brown Bag*, 960 F.2d at 1471; *Intel*, 198 F.R.D. at 530. If Ms. Hogan obtained access to NuGen's confidential information, she inevitably would be placed in the "untenable" position against which federal courts have repeatedly warned; that is, she may ultimately be asked to make decisions for, or provide advice to, HyperQuest or its president, without utilizing NuGen's confidential information in any way, even though such knowledge could benefit her financially. This moment could come next week or it could come in 5 years. It simply is not fair to NuGen to submit its commercial success to that risk. Even with the best intentions, the likelihood and risk of Ms. Hogan unintentionally revealing NuGen's most sensitive information to her husband is sufficiently high to justify barring her access to NuGen's most confidential information.

### B.     HyperQuest Could Seek Substitute Counsel.

The second factor in the *Brown Bag* analysis–the impact of a protective order on HyperQuest's ability to prove its case–also supports barring Ms. Hogan from accessing NuGen's

highly sensitive materials, because there really would be no impact.  According to HyperQuest, Ms. Hogan serves only as outside litigation counsel; therefore, obtaining substitute counsel at this early stage of this litigation would neither be difficult nor unduly prejudicial.  Obviously, HyperQuest is free to engage an attorney who is unrelated to the corporation – the undeniable practice of the overwhelming majority of persons and corporations engaged in litigation.

HyperQuest has characterized Ms. Hogan's involvement in its business as peripheral, based solely upon information in Ms. Hogan's own self-serving declaration.  Moreover, while Ms. Hogan states that she is not currently involved in HyperQuest's business aside from this litigation, that situation could change.  Indeed, given her unique relationship to this family-run business, it is not unforeseeable that she could take on a greater involvement in the day-to-day operations as in-house counsel or in some other capacity.  Further, her marriage to HyperQuest's president also presents the daily possibility that sensitive information could be disclosed if, for example, she were to take work from this case home with her.

Ms. Hogan's claim that she is not a shareholder may only be technically accurate, given that stock acquired during a marriage is presumed marital property in Illinois and, therefore, subject to division upon dissolution of the marriage (or, presumably, death of Mr. Hogan).  *In re Marriage of Peters*, 760 N.E.2d 586, 588 (Ill. App. Ct. 2001) (citing 750 Ill. Comp. Stat. 5/503(b)(1) (West 2000)).

It is also not unforeseeable that knowledge gained by Ms. Hogan from NuGen's proprietary information could be used to advise HyperQuest without any "technical" violation of the Protective Order.  Ms. Hogan filed this lawsuit, sought discovery, and has acted aggressively to interfere with NuGen's business.  This may be the best evidence of Ms. Hogan's involvement in the "competitive decision-making" of HyperQuest.  She drafted the Complaint, the discovery,

and engaged in motion practice to this Court.  Additional strategy in prosecuting this lawsuit, formulating additional discovery, and advising her husband on litigation and settlement tactics cannot occur in a vacuum.  NuGen respectfully submits that her continued involvement creates an unfair playing field in the parties' respective decision-making.

## **CONCLUSION**

In sum, Ms. Hogan would not be able to "unlearn" secrets and information gleaned from NuGen's confidential and proprietary documents.  A protective order screening her and her firm from proprietary documents will not adequately protect NuGen.  Allowing her access to such documents and information could jeopardize NuGen's competitive position in the parties' industry.  Based on the foregoing, NuGen respectfully requests that this Court grant its Motion to Disqualify and for such other, further, and different relief as this Court deems just and equitable.

Respectfully submitted this 27th day of May, 2008.

NUGEN I.T., INC. and DAYLE PHILLIPS

By: _____ s/ ***Nora M. Kane*** _____

    Mark J. Peterson (*pro hac vice*)
    Nora M. Kane (*pro hac vice*)
    STINSON MORRISON HECKER LLP
    1299 Farnam Street, 15th Floor
    Omaha, Nebraska  68102-1818
    Phone:  (402) 342-1700
    Fax:      (402) 930-1701
    mpeterson@stinson.com
    nkane@stinson.com

And

    Monte L. Mann
    Kristen Werries Collier
    NOVACK AND MACEY LLP
    100 North Riverside Plaza
    Chicago, IL  60606-1501
    Phone:  (312) 419-6900
    Fax:      (312) 419-6928
    mmann@novackandmacey.com
    kwc@novackandmacey.com

    Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 27th day of May, 2008, I electronically filed the foregoing Defendants' Memorandum of Law in Support of Its Motion for Protective Order using the CM/ECF system which sent notification of such filing to all counsel of record, properly addressed as follows:

Deborah Rzasnicki Hogan
Chad A. Blumenfield
GOLDBERG, KOHN, BELL, BLACK,
   ROSENBLOOM & MORITZ, LTD
55 East Monroe, Suite 3300
Chicago, IL  60603
deborah.hogan@goldbergkohn.com
chad.blumenfield@goldbergkohn.com

s/ ***Nora M. Kane***
Nora M. Kane