IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYPERQUEST, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | No. 08 C 0485 ) ) Honorable Charles R. Norgle |
| NUGEN I.T., INC. and DAYLE PHILLIPS, | ) ) |
| Defendants. | ) ) ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Nugen I.T., Inc.'s ("NuGen") and Dayle Phillips's (Phillips) (collectively, "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and Defendant Phillips's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). For the following reasons, Defendants' motion to dismiss on jurisdictional grounds is granted. Because the Court need not reach Phillips's concurrent motion for judgment on the pleadings, it is denied as moot.

### I. BACKGROUND

A. FACTS

The Court shall consider the following facts, which it takes from Plaintiff's Complaint for Injunctive Relief and Damages and from the declarations submitted by the parties in support of their positions. However, as discussed more fully below, the Court sustains in part Defendants' objection to several portions of the Declaration of Jeffery J. Hogan ("Hogan"). As such, the Court shall disregard those paragraphs in Hogan's Declaration that it determines constitute either hearsay or irrelevant matter and are therefore not properly before the Court. See infra Part II.B.

Plaintiff Hyperquest, Inc. ("Hyperquest") brought a one-count complaint for copyright infringement against Phillips, in his individual capacity, and NuGen, which allegedly marketed and sold a software product that copied protected graphics and other materials from Hyperquest's competing software, "e-Doc Express." See Compl. ¶¶ 33, 35, 37-42. Defendant Phillips is the President, Secretary, Treasurer and shareholder of the corporate defendant, NuGen. Compl. ¶ 3. Phillips is a Kansas resident. Id. In support of his motion, Phillips declared that he: does not conduct business in Illinois, either personally or through NuGen; does not own property or have an office in Illinois; is not registered to do business in Illinois; has never voted in Illinois; has never been liable for income taxes in Illinois; and has never lived in Illinois. Def.'s Memo In Support, Ex. A., Decl. of Dayle E. Phillips ("Phillips Decl."), ¶¶ 6-9. Phillips also declared that he had no involvement with Hyperquest in Illinois following his employment with a company known as the Safelite Group Inc. f/k/a Safelite Glass Corp. ("Safelite"), which we discuss below. Id. ¶ 13.

Defendant NuGen is a Nevada corporation, incorporated as of April 2006, with its principle place of business in Las Vegas, Nevada. Compl. ¶ 2. NuGen's majority shareholder, who is familiar with the company's day-to-day operations, declared that NuGen: has no offices in Illinois; is not registered to do business in Illinois; does not own or lease property in Illinois; does not conduct any business in Illinois; and has not solicited business or made sales in Illinois. Def.'s Memo In Support, Ex. B., Decl. of John Pete Tagliapietra ("NuGen Decl."), ¶¶ 2-8.

Plaintiff Hyperquest is a Delaware corporation with its principle place of business in Skokie, Illinois. Compl. ¶ 1. Hyperquest provides internet-based technology products and services to entities in the property and casualty insurance industry. Id. On July 6, 2004 Hyperquest acquired from Safelight a "worldwide, exclusive" license to market, lease and sub-

license Safelight's e-Doc Express software, which was initially designed for the electronic processing of insurance claims. Id. ¶¶ 11, 31-32. A few years later, in October 2007 Hyperquest discovered that Phillips was working with NuGen to market and sell a product similar to e-Doc Express, which they called "Enterprise Workflow." Id. ¶¶ 33-34. This discovery caused Hyperquest to seek copyright protection for its e-Doc Express software and eventually spawned this lawsuit. Hyperquest's relationship with Phillips, however, began three years earlier.

### *1. Phillips, Safelight and the e-Doc Express Software*

In 1996 Phillips founded DAIS, Inc., a Kansas corporation, and began product development for the e-Doc Express software. Compl. ¶¶ 7-8. In October 2000 DAIS, Inc. merged with Small Hill, Inc. to form a company called Quivox Systems Incorporated ("Quivox"). Id. ¶ 9. Sometime in 2001, while working at Quivox, Phillips completed development of e-Doc Express. Id. ¶ 10. In July 2001 Quivox ceased operations, which allowed Safelight to consider a potential acquisition of Quivox's assets, which included the e-Doc Express software. Id. ¶¶ 14, 16. In 2003, just prior to its acquisition of Quivox's assets, Safelight identified Phillips as a valuable resource to the company and sought to extend to Phillips an offer of employment given his intimate knowledge of e-Doc Express. Id. ¶ 17. Phillips accepted Safelight's offer of employment in April 2003. Id. ¶ 18. On May 9, 2003 Safelight and Quivox entered into an asset purchase agreement through which Quivox assigned to Safelight all rights and interest to the e-Doc Express software. Id. ¶¶ 19-20.

The e-Doc Express software is used primarily by insurance companies to assign repair claims, over the internet, to people who prepare estimates of repair costs. See Memo In Opposition, Ex. A, Decl. of Jeffrey J. Hogan ("Hogan Decl."), ¶¶ 57-59. These people include employees of insurance companies, independent appraisal companies and appraisers that work

for repair shops. Id. ¶ 59. For these appraisers to accept an assignment and to return their estimates back to the insurance company using the internet, the appraiser must download to its computer a bundle of programs that allows them to do so. Id. ¶ 61. This software is made available to appraisers through "an interactive website." Id. Although, the record remains unclear as to what internet website, exactly, appraisers access and interact with to download the e-Doc Express software.

In November 2006 Safelight filed a U.S. copyright application for the registration of e-Doc Express. Compl. ¶ 36. On November 21, 2006 the U.S. Copyright Office issued to Safelight copyright registration TX u001318816 for e-Doc Express. Id. On January 7, 2008 Hyperquest recorded with the U.S. Copyright Office the e-Doc Express license that it previously acquired from Safelight. Id. ¶ 37.

### 2. *Phillips's Contacts With Hyperquest*

Beginning in May 2003 Hyperquest and Safelight considered the possibility of working together. Id. ¶ 8; Compl. ¶ 21. Later that year the two companies contemplated the potential integration of Safelight's e-Doc Express software into certain products developed by Hyperquest. Compl. ¶ 22. Phillips, as a Safelight employee with an intimate knowledge of e-Doc Express, took part in the companies' discussions and was eventually introduced to Hyperquest's president and founder, Jeffrey J. Hogan ("Hogan"). Compl. ¶¶ 17, 22; Hogan Decl. ¶¶ 11, 20. As the discussions progressed, between July 11, 2003 and August 1, 2003, Phillips approached Hogan regarding a potential business relationship between Phillips and Hyperquest, independent of Safelight. Hogan Decl. ¶ 14.

Thereafter, Phillips remained a Safelight employee, but nevertheless attempted on several occasions to establish a working relationship between himself and Hyperquest. Id. ¶ 17. On

each occasion, Phillips communicated with Hogan through either e-mail, facsimile, telephone or in-person. Id. ¶¶ 14-16, 18-19, 22-23. All the while, Safelight and Hyperquest continued to conduct meetings and discussions regarding the integration of e-Doc Express with Hyperquest's software. Id. ¶ 25. Between September 2003 and March 2004, on at least four occasions, Phillips traveled to Chicago on behalf of Safelight to take part in meetings or discussions and to execute an integration plan for the two companies. Id. ¶¶ 25-26, 31, 33, 38. Yet, while Phillips traveled generally on behalf of Safelight, he continued to discuss with Hogan his various ideas for a working relationship between himself and Hyperquest. Id. ¶¶ 26-28, 34, 37, 39.

Hogan last met with Phillips in-person on March 1, 2004. Id. ¶ 40. By this time Phillips had notified Safelight that he was leaving the company, and thus Phillips traveled to Chicago on behalf of Safelight to complete a number of projects relating to the integration of the e-Doc Express software. Id. During this visit, which Hogan describes as an "intense week of work," Phillips spoke with Hogan once again regarding a potential working relationship. Id. ¶ 41. Phillips left Safelight and the State of Illinois on March 5, 2004. Id. ¶ 40.

For a brief period after Phillips left Safelight, he continued his discussions with Hogan. See id. ¶¶ 41-51. These discussions were limited to either telephone or electronic communications. Specifically, Phillips sent to Hogan additional e-mails on March 11, 2004 and March 12, 2004 regarding a software application that he and an unnamed partner had developed to integrate with Hyperquest's "system" and the e-Doc Express program. Id. ¶ 41. On March 22, 2004 Phillips sent to Hogan an e-mail requesting a telephone conference, which they conducted on March 29, 2004. Id. ¶ 43, 45. And, on March 31, 2004 Phillips sent to Hogan a draft agreement in which he proposed that NuGen – an entity that had not yet been incorporated – would act as a reseller of the e-Doc Express software. Id. ¶ 47. Ultimately, Hyperquest and

Nugen did not enter into a business relationship. Id. ¶ 52. Phillips's March 31, 2004 communication is the last, documented contact between Phillips and Hogan. According to Phillips, that was his last contact with Illinois.

### 3. *Phillips and NuGen*

Phillips did not return to Illinois following his employment with Safelite. See Phillips Decl. ¶ 12. Instead, Phillips partnered with John Tagliapietra ("Tagliapietra") to form NuGen. See id. ¶ 3; NuGen Decl. ¶ 2. In April 2006 Phillips and Tagliapietra incorporated NuGen in Nevada. Compl. ¶ 2. In or around October 2007 Tagliapietra traveled to Albany, New York on behalf of NuGen to negotiate new business with the Metropolitan Life Insurance Company ("MetLife"). NuGen Decl. ¶ 9. At about the same time, Hyperquest learned of NuGen's negotiations with MetLife and that NuGen was marketing and selling to other out-of-state companies a software application called, "Enterprise Workflow." Compl. ¶¶ 33-34.

### B. PROCEDURAL HISTORY

On January 22, 2008 Hyperquest filed a one-count complaint for copyright infringement against Phillips and NuGen, alleging that the Defendants' distribution of their Enterprise Workflow software infringes upon Hyperquest's exclusive rights with regard to the eDoc Express software. On March 4, 2008 NuGen and Phillips filed their motion to dismiss for lack of personal jurisdiction. The motion is fully briefed and before the Court.

### II. DISCUSSION

### A. STANDARD OF REVIEW

Once a defendant has challenged a court's exercise of personal jurisdiction, the plaintiff has the burden of demonstrating that the court's exercise of personal jurisdiction over a defendant is proper. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). It is well

established law that "[a] federal court's exercise of personal jurisdiction over a non-resident defendant is proper 'only if a court of the state in which it sits would have such jurisdiction.'" Edelson v. Ch'ien, 352 F. Supp. 2d 861, 865-66 (N.D. Ill. 2005) (quoting Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995)); see also Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1212 (7th Cir. 1984). This court therefore has jurisdiction over this matter "'only if [an Illinois State Court] would have such jurisdiction.'" Edelson, 352 F. Supp. 2d at 866 (quoting Klump, 71 F.3d at 1371).

The inquiry into whether this Court has jurisdiction over these Defendants must therefore begin with "an application of the statutory law of [Illinois]." Jennings v. AC Hydraulic A/S, 383 F.3d 546, 548 (7th Cir. 2004). After considering Illinois' statutory framework concerning jurisdiction over non-resident defendants, the Court must then consider whether its exercise of jurisdiction would "comport[] with due process." Id. at 549. The Seventh Circuit has determined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 715 (7th Cir. 2002). One due process inquiry is sufficient. Edelson, 352 F. Supp. 2d at 866.

### 1. Illinois Long-Arm Statute

Under the Illinois Long-Arm Statute, 735 ILL. COMP. STAT. 5/2-209(a)(2), an Illinois court may exercise personal jurisdiction over a non-resident defendant "who in person or through an agent [engages in] [t]he commission of a tortious act within this State." See Edelson, 352 F. Supp. 2d at 866. Where the injury alleged is economic in nature, rather than physical or emotional, however, "the plaintiff needs to show more than the 'harm was felt in Illinois,' the plaintiff must also show an 'intent to affect an Illinois interest.'" Id. at 867 (quoting Real Colors, Inc. v. Patel, 974 F. Supp. 645, 649 (N.D. Ill. 1997)); see also Arthur Young & Co. v. Bremer,

7

554 N.E.2d 671, 676 (Ill. App. Ct. 1990). Illinois courts may also exercise jurisdiction where a defendant transacts "any business within this state." 735 ILL. COMP. STAT. 5/2-209(a)(1).

### 2. Due Process

A court's inquiry into whether its exercise of jurisdiction over a nonresident defendant would be consistent with due process of law should begin with the familiar "minimum contacts" rule articulated by the United States Supreme Court in International Shoe Co. v. Washington:

> Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The Supreme Court, in Hanson v. Denckla, went on to explain that the necessary minimum contact with the forum state is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253 (1958).

The Supreme Court elaborated on the notion of "purposeful availment" in Burger King v. Rudzewicz:

> This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random . . . contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State. Thus, where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burden of litigation in that forum as well.

471 U.S. 462, 475-76 (1985) (citations and internal quotation marks omitted). In addition to the concept of purposeful availment, "[t]he minimum contact requirement contains the notion of

8

foreseeability." Deluxe Ice Cream, 726 F.2d at 1213 n.4 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). When a corporate defendant conducts activities within the forum state sufficient to establish minimum contacts, "it has clear notice that it is subject to suit there." Volkswagen, 444 U.S. at 297.

The court should not stop its inquiry into personal jurisdiction after simply determining that minimum contacts exist, however. The court should go on to ask whether exercising personal jurisdiction is reasonable. A further aspect of a court's inquiry into personal jurisdiction is therefore the nature of the relationship among "the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). "This relationship must be such that it is reasonable to require a nonresident corporation to defend a suit in the forum state in the context of our federal system of government." Deluxe Ice Cream, 726 F.2d at 1213 (citing Volkswagen, 444 U.S. at 292-93).

The Supreme Court has indicated that courts may exercise one of two sorts of jurisdiction over out-of-state defendants: general or specific. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). "General jurisdiction exists when the defendant has 'continuous and systematic' contacts with the forum state." Edelson, 352 F. Supp. 2d at 866 (quoting Helicopteros, 466 U.S. at 416). Where defendant has such contacts with the forum state, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." Hyatt, 302 F.3d at 713. In the absence of general jurisdiction, courts may exercise specific jurisdiction, which is limited to cases where the "litigation arises out of or is related to [the defendant's contacts with the forum state]." Logan Productions v. Optibase, 103 F.3d 49, 52 (7th Cir. 1996).

### B. DECLARATION OF JEFFERY J. HOGAN

Hyperquest's brief in opposition to the instant motion relies heavily on the Declaration of Jeffery J. Hogan ("Hogan Declaration"), Hyperquest's president, to establish Defendants' alleged contact with the forum state. Defendants, however, object to several paragraphs contained in the Hogan Declaration pursuant to FED. R. EVID. 402 and 802. At the outset, given the definition of relevant evidence under Rule 401, the Court overrules in its entirety Defendants' relevance objection pursuant to Rule 402. The Defendants challenge as irrelevant no less than 60 statements contained in the Hogan Declaration, but apply their objection too narrowly. The proffered statements are relevant to the extent they illustrate the Defendant's alleged continuous and systematic contacts with Illinois. In this way, these statements support Hyperquest's position that the Defendants maintained the requisite minimum contacts with Illinois so that this Court could exercise either general or specific jurisdiction over them. Whether these statements ultimately carry the day is of no consequence to this limited evidentiary challenge. As such, the Court shall consider these statements when making its determination, to the extent they are made upon Hogan's personal knowledge.

Citing Rule 802, Defendants also contend that Paragraphs 8, 9, 10, 11, 21, 28, 55, 63, 64, 65, 66, 67, 68, 69, 71, 73, 74, 78, 79, 80, 81, 82, 83, 84, 85 86, and 87 of the Hogan Declaration are hearsay statements that this Court should ignore. Upon a close review of the Hogan Declaration, the Court sustains Defendant's objection as to Paragraphs 8-10, 11 (in part), 55, 63-64, 68-69, 71 (in part), 73-74, 78-85 and 87. The Court finds that the statements contained in these paragraphs are not based on Hogan's personal knowledge. Rather, Hogan purports to have acquired knowledge of these assertions from unsupported sources such as "business contacts," "senior level contacts," unnamed executives and other anonymous informants. Hogan,

moreover, failed entirely to corroborate these statements with supporting documents, communications or testimony, as he did for many of the statements that the Defendants did not challenge. As such, the Court disregards the statements listed above and shall not consider them for purposes of this motion. See Tibbetts v. RadioShack, Corp., No., 03 C 2249, 2004 WL 2203418, at *14 (N.D. Ill. Sept. 29, 2004) (Pallmeyer, J.) (considering the sufficiency of a declaration and disregarding those paragraphs that did not comply with procedural or evidentiary rules); see also Custom Cartage, Inc. v. Motorola, Inc., No. 98 C 5182, 1999 WL 965686, at *4 (N.D. Ill. Oct. 15, 1999) (Kocoras, J.) (disregarding portions of an affidavit that were not based on personal knowledge).

## C. DEFENDANTS' CONTACT WITH ILLINOIS

### 1. Jurisdiction in Illinois

In line with the standards that govern personal jurisdiction, Hyperquest first argues that jurisdiction exists under the Illinois long-arm statute because (1) Defendants committed tortious acts in Illinois and (2) because NuGen conducts business in Illinois over the Internet. The Court shall discuss each of these points in turn.

#### a. Tortious Conduct With Intent to Affect An Illinois Interest

On the first point, Hyperquest argues that the alleged copyright infringement, assuming there was one, occurred in Illinois because Illinois is where Hyperquest suffered its alleged injury. The Court agrees with this contention and recognizes the long-standing principle that any injury to the owner of intellectual property rights occurs in the forum in which the owner is located. Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., 767 F. Supp. 181, 183 (N.D. Ill. 1991) (extending this tenet to claims for copyright infringement and citing Acrison, Inc. v. Control and Metering, Ltd., 730 F. Supp. 1445, 1448 (N.D. Ill. 1990)). Hyperquest is an

11

Illinois corporation with its principle place of business in Skokie, Illinois. Thus, if any injury occurred as a result of the alleged copyright infringement, that injury occurred in Illinois. But this is not the end of the inquiry, especially where the injury is solely economic in nature.

For the Illinois long-arm statute to apply, Hyperquest may not rely solely on a showing that the alleged harm was felt in Illinois. Hyperquest must also show that there was intent on behalf of the Defendants to impinge upon an Illinois interest. E.g., Heritage House Restaurants, Inc. v. Cont'l Funding Group, Inc., 906 F.2d 276, 282 (7th Cir. 1990). This requirement is a limitation on the tortious act provision of the Illinois long-arm statute and is applied when the only relevant fact connecting the Defendant to Illinois is that "the consequences of [Defendant's] misconduct were felt in Illinois." Club Assistance Program, Inc. v. Zukerman, 594 F. Supp. 341, 346 (C.D. Ill. 1984) (citing Green v. Advance Ross Elec. Corp., 86 Ill.2d 431, 438-40 (1981)). This additional limitation mirrors the requirement under the due process clause that the defendant "purposefully avail himself of the forum state's benefits." Edelson, 352 F. Supp. 2d at 867 n.2. This requirement ensures that jurisdiction is not based on random or fortuitous contacts with the forum state, but is based on voluntariness and foreseeability. See Capitol Hardware Mfg. Co., Inc. v. NATCO, Inc., 707 F. Supp. 374, 377 (N.D. Ill. 1989) (citing Saylor v. Dyniewski, 836 F.2d 341, 344 (7th Cir. 1988)). This means that the contacts must not be based on the unilateral actions of another party and must be such that a defendant could reasonably anticipate being haled into court in Illinois.

In its brief in opposition, Hyperquest concludes, without support, that Phillips and NuGen "by improperly infringing [upon Hyperquest's] rights purposefully directed activities at an Illinois resident and intended to affect Illinois residents." See Pl.'s Brief in Opp'n at 21. This argument, in essence, is an impact theory of minimum contacts, which mistakenly assumes that

because defendants' alleged tortious conduct would be felt in Illinois, the defendants *must have* acted with an intent to affect an Illinois interest. But this theory fails because it is too speculative to show the requisite intent on behalf of the Defendants to affect an Illinois interest. Morgan v. GTECH Corp., No. 90 C 238, 1990 WL 251900, at *5 (N.D. Ill. Dec. 19, 1990) (Kocoras, J.) (rejecting the "impact theory" and finding plaintiff's residence in Illinois fortuitous). Aside from this argument, there is nothing in the Complaint or in parties' submissions from which to conclude that the Defendants intentionally sought to affect an Illinois interest when they designed and marketed the allegedly infringing software.

Instead, the Defendants, as they sought to sell their software, neither targeted directly the Illinois market nor solicited directly Illinois customers. NuGen's majority shareholder testified explicitly that the company had no customers or sales in Illinois. NuGen Decl. ¶¶ 8-9. This testimony remains uncontested. And while the Defendants may have sought a customer in New York, there is no evidence that the Defendants contacted anyone in Illinois, traveled to Illinois or sold their infringing product in Illinois. What is more, the parties' submissions reveal that during the time Phillips worked for Safelight as a non-resident agent in Illinois, the allegedly infringing software had not yet been developed and the company NuGen did not exist until its incorporation in April 2006. The record is therefore void of any evidence that the Defendants even contemplated that their allegedly infringing product would end up in the Illinois marketplace. Accordingly, Hyperquest's bare assertion that the Defendants sought to affect an Illinois interest, without anything more, is insufficient to satisfy the tortious act provision of the Illinois long-arm statute, when the nonresident Defendant is alleged to have undertaken conduct that caused economic harm in Illinois. See McIlwee v. ADM Indus., Inc., 17 F.3d 222, 225 (7th Cir. 1994) ; see also FMC Corp. v. Varonos, 892 F.2d 1308, 1314 (7th Cir. 1990) (finding a clear intent to

affect an Illinois interest where nonresident defendant made phone calls to Illinois in furtherance of a scheme taking place in Illinois); Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, 262 F. Supp. 2d 898, 910-11 (N.D. Ill. 2003) (finding an intent to affect an Illinois interest where plaintiffs demonstrated that defendants knew that they were dealing with Illinois corporation).

### b. Transacting Business In Illinois

For its second argument that jurisdiction exists under the Illinois long-arm statute, Hyperquest asserts that NuGen conducts business over the Internet and therefore transacts business in Illinois. In support, Hyperquest relies on numerous paragraphs in the Hogan Declaration that this Court has stricken and will not consider. See supra § II.B. As a result, Hyperquest presents nothing to support the immediate position that NuGen is transacting business in Illinois, but instead offers the mere presumption that the customers of NuGen's customers might ultimately use NuGen's software, and that such use might occur in Illinois. This is purely speculative. Again, NuGen's majority shareholder testified that "NuGen does not conduct any business in the State of Illinois" and "has not solicited business, nor made sales in the State of Illinois." NuGen Decl. ¶¶ 7-8. In a supplemental declaration, NuGen's majority shareholder, Tagliapietra, further testified that NuGen maintains password-protected websites, which are only accessible to NuGen's customers, and that NuGen's customers do not have access to the allegedly infringing software. NuGen Supp. Decl. ¶¶ 6-9. NuGen's insurance customers, says Tagliapietra, use outside vendors to make inspections, none of which have central offices in Illinois. Id. ¶ 8. The software is so removed, he states, "If there are Illinois residents accessing [the NuGen] websites, they are doing so without the knowledge and consent of NuGen." Id. ¶ 12. Hyperquest offers nothing of substance that counters this realization. In

this light, Hyperquest's presumptive statement is insufficient to show that either NuGen or Phillips transacts business in Illinois. For this, Hyperquest failed to make a sufficient showing pursuant to the Illinois long-arm statute.

Hyperquest argues in support of its minimum contacts analysis that Phillips, at one time, maintained a sufficient relationship with Illinois so that it is reasonable for him, and the company for which he is affiliated, to defend a suit in this Court. The Court disagrees. To back this argument, Hyperquest relies on Phillips's contacts with Illinois prior to his leaving Safelight. The parties' submissions indicate that while Phillips worked for Safelight, it was no secret that he often wore two hats. Hogan testified as to four occasions between September 2003 and March 2004 in which Phillips visited Chicago on behalf of Safelight, but also with a personal agenda in mind. Phillips approached Hogan on each of the four visits about a potential working relationship between Hyperquest and himself. Through a March 31, 2004 communication with Hogan, Phillips sought to become a reseller of NuGen's eDoc Express software, but the parties failed to reach an agreement. All discussions between Hogan and Phillips ceased on May 11, 2004. Phillips ceased all contact with Illinois on May 11, 2004.

Despite Phillips's previous contact with Illinois, Hyperquest omits from its analysis a crucial fact – that all of this took place before NuGen marketed or sold its software and before NuGen was even incorporated. Hyperquest asserts that NuGen was marketing its Enterprise Workflow software in October 2007, but offers nothing to support the argument that such marketing ever took place, in any form, in Illinois. Instead for at least three years the Defendants stayed out of Illinois. Recall that Hogan and Phillips's last personal contact was on May 11, 2004. Therefore, a cause of action in this case, if any, arose well after the Defendants left Illinois and was unrelated to Phillips' previous limited contacts with Illinois. This break in continuity

cuts against the minimum contacts necessary under due process to maintain a cause of action against the Defendants in Illinois, where the Defendants' contact with the state is indeed overwhelmed by the Defendants' lack of contact. See Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003) (holding that minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit); Glass v. Kemper Corp., 930 F. Supp. 332, 338-39 (N.D. Ill. 1996) (finding no jurisdiction where defendant never lived, owned property, kept an office, or voted in Illinois, thus making his contacts "sporadic" and insubstantial to warrant jurisdiction for matters unrelated to his contacts with the state); Matsushita Elec. Indus. Co., Ltd. v. Siliconix Inc., No. 05 C 732-S, 2006 WL 517628, at *3 (W.D. Wis. Mar. 2, 2006) (transferring case to CA but first noting that jurisdiction was doubtful because no sales of infringing product, through a reseller, had taken place for several years, and defendant had no offices, employees or property in the forum state); Reeves v. Balt. & Ohio R.R. Co., 526 N.E.2d 404, 407 (Ill. App. Ct. 1988) (finding that because the defendant did not do any business or have any income in Illinois for four years prior to being served, he was not amenable to personal jurisdiction).

In conclusion, we find that Hyperquest failed to satisfy the requirements for personal jurisdiction under the Illinois long-arm statute. Accordingly, since Illinois would not have jurisdiction over the Defendants, the exercise of personal jurisdiction over the Defendants in this Court would be improper. This ruling and the reasoning set forth above vitiate Hyperquest's additional arguments regarding the exercise of personal jurisdiction over the Defendants, and thus the Court finds it unnecessary to entertain them here.

### III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of personal jurisdiction is granted. Defendant Phillips's motion for judgment on the pleadings is denied. IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: 6/18/08